Johnson, J.
1. The question whether Prince’s Digest of the laws' of Georgia ought to be received as evidence of the laws of that State in our courts of justice, came up before the Court in Lee v. Ware, 1 Hill, 313, and although it was reserved as. unnecessary to that case, I took occasion to indicate the inclination of my own mind, that it was admissible, and subsequent reflection has tended to strengthen and confirm that opinion. I am disposed, in considering this question, to concede that Georgia is a foreign State, and I am aware that the general rule is that the laws of foreign nations, designed for the direction of their own affairs, ought not to be noticed in our Courts unless proved as facts, 1 Cranch, 38. But in Lee v. Ware, I had occasion to remark, and upon reference to the Digest it will be found, that it was compiled under the authority of the Legislature of Georgia, and that the governor was by law authorized to examine and approve *321 it. The book itself contains the certificate of his approbation, and in all other respects it carries with it all the marks of authenticity which belong to any book, published on any subject. Georgia is only separated from this State by the Savannah river. In both States the attornies licensed to practice in the Courts of either, are, by reciprocal acts -of the" Legislature, allowed to practice in the Courts of the other, and many of both States residing near the border, have availed themselves of this license, and it is as well understood by all this class of our own lawyers, and indeed by most well informed persons residing near the boundary, that Prince’s Digest is received in the Courts of the State of Georgia as authority for the State law, unless it is shewn to have been repealed, as that the public laws of this State compiled by the late Mr. Justice Grimke, or the acts of assembly by Mr. Faust, are received as authority for the statute law of this State.
The usual mode of proving a statute law of a foreign State, is by an exemplification of the statute certified by the proper officer and in the proper manner; but I am unable to perceive any possible advantage which that mode of proof has over the printed book. The liability to err in copying is precisely the same in the copyist as in the printer; and it would be unsafe to trust to the certificate of the officer, if that was part of his duty, that the statute was or was not repealed; the keeper of the public records is not necessarily a lawyer,, and whether a statute had or had not been repealed, might involve a question of difficulty; and upon the whole, it appears to me quite as safe to trust to a book bearing such evidence of authenticity, as to-a certified copy of the statute. If a cause arises which is to-be decided according to the laws of another-State, that must be equally known to both parlies, and both have the same means, of ascertaining what these laws are, and-it is not likely that a party would suffer himself to be surprised by a statute which had been repealed.
In Thompson v. Musser, 1 Dallas, 458, it was held, that a pamphlet stitched in blue paper, with a title page, expressing-that it contained “Acts passed at the general assembly of the commonwealth of Virginia, begun to be holden at the public building in the city of Richmond,” and purporting to be printed by the printers of the commonwealth, ought to have been received in evidence; and Chief J. M’JKean thus expresses himself in delivering the opinion of the court; “I admit that tins printed copy of the act of assembly, .though it purports to be printed by-the printer of the laws of Virginia,-is not such good evidence as a sworn copy compared-with the rolls, or an exemplification under the great seal; but these modes of ex. emplification are inferior to the original law itself. But if the *322 plaintiff in error had been sued in Virginia, this printed book would there have been unquestionably good evidence, and I can discover no satisfactory reason, as he is sued here, why the same evidence should not be received, at least prima facie. There might perhaps be some danger, by an indiscriminate admission of this mode of proof of the local laws of foreign States or countries; and I put the admissibility of this book upon the ground that it is commonly known by the bar and the bench that in Georgia it is received as authority for the statute law of that State ; and I might add the further circumstance that a copy is now in the Legislative library of this State, and most probably was presented to the State by the authorities of Georgia, as containing the statute laws of that State. The circumstance that the plaintiffs’ counsel omitted to tender the book formally in evidence before the argument of the cause was gone into, ought not, I think, to deprive him of any benefit he might derive from it. The rule which prohibits the introduction of new evidence after the evidence is closed, was intended to guard against the frauds and inconvenience which might ensue from a different practice. But when important evidence has been omitted by the inadvor-tance of counsel or from any other cause to which no suspicion attaches, it is not unusual to admit it at any stage of the case before the jury have retired, and I have myself, when on circuit, sometimes admitted evidence when on summing up to the jury the counsel for the first time discovered the omission.
3 mil, 40-1.
I am disposed to think, too, that irwas unnecessary for the purpose of this case that the plaintiff should have made proof of what the laws of Georgia are. The object was to show that according to these laws, playing at faro was unlawful there. It is true that the legality or illegality of any transaction must depend on the law of the place where it transpires, but it is incumbent on those who would avail themselves of it to shew what that law is. In this State playing at faro is unlawful and punished by fine, and if we are obliged to determine that question in utter ignorance of what the law of Georgia is, we must resolve it by our own rule, for the obvious reason that we have no other.
The plaintiffs claim in this action to recover a sum of money which they allege the defendants unlawfully obtained from their agent, Maine, and according to the laws of this State the manner of obtaining it was confessedly unlawful, but it appears that it was obtained in Georgia, and according to the rule, the laws of that State must govern, and if there be any thing in them which legalizes the transaction, the defendants are to be protected by it, and surely it was incumbent on them to prove it.
*323 Assuming then that the defendants won the money of Maine, the plaintiff’s agent, at an unlawful game, the next question which arises is, whether the plaintiffs are entitled to recover it back. It will be conceded that the principal is only bound by the acts of his agent to the extent of the authority with which he has invested him ; nor will it be questioned that if an agent gives away or is defrauded of the goods of his principal intrusted to his care for safe keeping or to be used in a particular way, that the principal may recover them back ; and upon the same principle, he might recover back goods won from his agent at an unlawful game, if that mode of disposition was not within the scope of his authority. But it is said that money, or bank bills which for the purposes of commerce are considered as identical, has no ear-mark, and therefore trover will not lie to recover it. But in Miller v. Race, 1 Bur. 458, cited at the bar, Lord Mansfield says, that is not the true reason why trover will not lie to recover money. Money is the currency of the country, and to permit it to be pursued after it has gone into circulation, would be injurious to commerce; and his Lordship adds, that before it has gone into circulation, tro-ver may be brought to recover the money itself. In Bacon’s Abr. Tit. Trover, D. it is said that the design of the action of trover is not to recover the thing in specie, but to recover damages for the conversion thereof; and that it lies to recover money, though not in a bag at the time of the conversion ; and as more directly applicable to the case in hand, it was ruled in Rey v. Stephens, 1 Sid. 122, cited in Bacon’s Abr. Tit. Trover, D. that if a feme covert use the money of her husband at play, an action of trover lies. So if a son, having a general authority to receive and pay money for bis father, receive money due on a bill to his father, and give a receipt for it as money received to the use of the father, and afterwards give it away, the father may bring trover against the donee; for his son’s receipt is a good discharge for the debt, and therefore his possession is the possession of the father, the son being as to this purpose his servant. Bul. N. P. 35, 1 Salk. 286.
From these cases I think it is very apparent that the error of the Circuit Court originated in confounding money passed into circulation, with its wrongful conversion; and that although it cannot be pursued into other hands, it Gan be recovered in tro-ver, like other chattels. That is the rightful remedy, against him who is guilty of a wrongful conversion.
Motion granted.
HaRpek, J. concurred.
O'Neall, J. absent.