HOOD, Judge.
Junius Lee Roman filed this suit for workmen’s compensation benefits, claiming that he is totally and permanently disabled. The defendants are John S. Broussard, and the latter’s insurer, Southern Farm Bureau *137 Casualty Insurance Company. The trial court rendered judgment for defendants, and plaintiff has appealed. We affirm.
The principal issue presented is whether plaintiff has been disabled since the payment of compensation benefits was terminated. Other issues are whether plaintiff should have been allowed to choose the doctor who performed a court-ordered myelogram, and whether the trial judge erred in refusing to reopen the case for additional medical evidence.
Plaintiff, a 22 year old farm laborer, was injured on November 28, 1969, while working for defendant Broussard. His right foot slipped as he attempted to throw two chains on a wagon, and he testified that he immediately felt pain in his back. He stated that he began feeling pain in his right leg about one week later, and that since that time he has suffered almost continually with pain in the middle of his back and pain and numbness in his right leg.
Roman contends that he has been totally disabled from lifting or performing any kind of manual labor since the date of the accident. He has never returned to his former employment, and he has not performed any heavy manual labor since the date of his injury. He acquired the ownership of a bar and lounge in July, 1970, however, and since that time he has worked as a bartender, although he contends that he has done no lifting.
The defendant insurer paid plaintiff compensation benefits at the rate of $45.00 per week for a total of eight weeks following the accident. It also paid him $157.27 for medical treatment, that being all of the expenses he incurred for such treatment. No other compensation benefits have been paid to Roman.
Plaintiff was treated by Dr. Joseph C. Musso, a general practitioner, from the date of the accident until January 2, 1970, at which time he discontinued going to that physician of his own accord. He was treated by Dr. James Boring Montgomery, also a general practitioner, from January 6, until he was discharged by that doctor on March 24, 1970. Between the last mentioned date and the date of the trial, on November 15, 1970, he was examined by at least four other physicians.
The record contains the testimony of six physicians. Three of them, including an orthopaedic surgeon, a neurosurgeon, and the original treating physician, Dr. Musso, testified that plaintiff had fully recovered from his injury by the time the payment of compensation benefits was discontinued, and that he has not been disabled since that time. The other three physicians, including an orthopaedic surgeon, a neurosurgeon, and the second treating physician, Dr. Montgomery, felt that Roman has sustained a ruptured intervertebral disc as a result of the accident and that he is totally and permanently disabled.
One of the neurosurgeons who testified examined plaintiff twice. The other neurosurgeon and both of the orthopaedists each examined him only once. None of these specialists treated Roman for his injury.
The lay testimony was as conflicting as was the medical evidence. Roman’s wife and his brother-in-law testified that plaintiff has suffered severe pain in his back and leg since the accident occurred, and that he has been unable to perform work requiring any lifting, or even minimum exertion. The manager of a beer distributorship, on the other hand, testified that after the accident occurred, plaintiff often came to her place of business and picked up cases of beer, weighing more than 38 pounds, and carried them from the warehouse to his car. She stated that he carried the cases alone, without any help, and that she never saw him limp or favor his leg in any way until the day of the trial.
At the conclusion of the trial, the judge took the case under advisement, stating that the medical evidence was so contradictory that he was unable to determine whether plaintiff was disabled.
*138 A few weeks later the trial judge, finding that the medical testimony “was in irreconcilable conflict,” invoked the provisions of LSA-R.S. 23:1123, and issued an order on December 22, 1970, directing plaintiff to submit to a myelogram examination to be performed by Dr. John D. Jackson, of Ochsner Clinic, in New Orleans. The order recites that this examination was directed because there was a “direct conflict of the medical evidence as to the nature and extent of plaintiff’s injury, which the court is unable to reconcile,” and because of “the stated willingness of plaintiff to submit to a myelogram examination, and the willingness of defendant to provide for same.” Roman’s approval of that order was evidenced by the signature of his attorney at the bottom of the decree, and by the fact that he voluntarily went to New Orleans and submitted to the myelogram examination.
Dr. Jackson, a neurosurgeon, examined plaintiff clinically on January 11, 1971, and he performed a myelogram examination on January 22, 1971. The doctor promptly submitted a report of those examinations to the court, and copies were supplied to counsel. In that report, the doctor expressed the firm opinion that plaintiff was not disabled. His report concludes with the following statement:
“In conclusion, after examining this patient and studying a completely normal spine x-ray and myelographic evaluation of the lumbar spine, as well as eliciting a profoundly hysterical response from this patient, it is my opinion that he has no objective evidence of degenerative disc disease or a bulging or ruptured lumbar disc.”
After receiving this report plaintiff filed a “Motion to Reopen Testimony,” in which he alleged that “this matter should be reopened prior to judgment for the taking of additional testimony in connection with the myelogram evaluation, namely that of Dr. Peter J. Jannetta, upon his reviewing the myelographic slides, and any doctor desired by the defendant for his review of the slides.” A rule was issued directing defendants to show cause why the case should not be reopened, and after trial of that rule judgment was rendered rejecting plaintiff’s demand to reopen the case. Judgment on the merits was rendered shortly thereafter in favor of defendants, rejecting plaintiff’s demands and dismissing the suit.
Plaintiff contends primarily that the evidence shows that he is totally and permanently disabled, and that the trial court erred in dismissing the suit. The substance of his argument is that the testimony of the doctors and lay witnesses who felt that he is disabled should have been given greater weight, and that the facts produced make it “more probable than not” that he has a ruptured disc.
After the trial, and before the myelogram was ordered, the trial judge apparently concluded that plaintiff had failed to establish by a preponderance of the evidence that he was disabled. We think this is evident from the record, because the trial judge observed that there was an “irreconcilable conflict” in the medical testimony, he specifically noted the lay evidence which was unfavorable to Roman, and he would not render judgment in favor of plaintiff on the evidence which was produced. The evidence presented at the trial on the merits obviously did not convince him that it was “more probable than not” that plaintiff was disabled.
The report submitted by Dr. Jackson several weeks after the trial certainly did not make plaintiff’s case any stronger. On the contrary, if that report should be considered here, we would have to construe it as being favorable to defendants, and very damaging to plaintiff. We are aware of the fact that the trial judge considered Dr. Jackson’s report, and that he indicated in his reasons for judgment that he was basing his decree partly on it. We think it is significant, however, that whether the report of Dr. Jackson is or is not considered, the judgment nevertheless would have to be the same, because in either event plaintiff *139 has failed to prove to the degree of certainty required by law that he is disabled.
 The established rule is that in a compensation case, as in any other civil case, the plaintiff bears the burden of proof to establish his claim by a preponderance of the evidence and to a legal certainty. Speculation, conjecture, mere possibility, and even unsupported probabilities, are not sufficient to support a judgment. Guillory v. New Amsterdam Casualty Company, 244 La. 225, 152 So.2d 1 (1963); Hebert v. Sentry Insurance Company, 224 So.2d 842 (La.App. 3 Cir. 1969).
We have reviewed the record, and we agree with the trial judge that the evidence fails to preponderate to the effect that plaintiff has been disabled since the payment of compensation benefits was discontinued. We prefer to base that conclusion solely on the evidence which was presented at the trial, without considering the later report of the myelogram examination, but the same conclusion would have to be reached whether the report submitted by Dr. Jackson is or is not considered.
Plaintiff contends that the court erred in directing him to submit to an examination by Dr. Jackson, without giving him the right to choose the physician who was to make the examination. We find no merit to that argument. The record shows that plaintiff, through his counsel, approved the order which was issued, and he voluntarily submitted to the examination. The trial judge noted that plaintiff had stated that he was willing to submit to such an examination, and we find nothing in the record to show that plaintiff ever objected to the appointment of that doctor or to any other physician selected by the court.
Roman contends, finally, that the trial court erred in refusing to reopen the case for additional medical evidence after the myelogram was performed. The only additional evidence which plaintiff wants to introduce if the case is reopened is the testimony of Dr. Jannetta relative to the results of the myelogram examination made by Dr. Jackson.
Dr. Jannetta, a neurosurgeon, examined plaintiff twice. He concluded that Roman had a ruptured intervertebral disc, and that he is totally and permanently disabled. He conceded that the x-ray examination which he made of plaintiff’s back showed his back to be perfectly normal. He also conceded that a myelogram (which had not been performed at the time the doctor testified) is from 90 to 92 percent accurate as a diagnostic procedure. He stated at the trial, however, that he is so confident of his diagnosis that plaintiff has a ruptured disc that he would be equally sure of it and would recommend surgery, even if the results of a myelogram should be negative.
If the case should be reopened for Dr. Jannetta’s testimony, the most that plaintiff reasonably could hope to accomplish would be to completely discredit the report of Dr. Jackson, and to render the myelogram examination totally valueless and unworthy of consideration. If that should be accomplished, the result of the myelogram would then have to be ignored, and the case would have to be decided on the other evidence presented. We have already shown that even without considering the myelogram plaintiff has failed to show that he is disabled. It is conceivable, but we think it is highly improbable, that Dr. Jannetta by his testimony could demonstrate that the myelogram which was performed establishes that plaintiff has a ruptured disc, directly contrary to Dr. Jackson’s report. But, if Dr. Jannetta should produce convincing evidence to that effect, his testimony would be contradicted by the report of the myelogram, with the probable result that there would simply be another conflict in the medical testimony.
 We have concluded that the trial judge did not abuse his discretion in refusing to reopen the case for additional testi *140 mony. We base that conclusion largely on three grounds. First, the evidence fails to show that plaintiff is disabled, whether the report of the myelogram is considered or is ignored. That report thus is not material or essential to the disposition of this case. Second, it is highly improbable that the additional evidence which plaintiff seeks to introduce could change the result reached by the trial court, even if the new evidence is assumed to be exceptionally strong and convincing in plaintiff’s favor. And, finally, the decision to reopen a case for the production of additional evidence after all parties have rested is one which is within the sound discretion of the trial court, and unless manifestly erroneous will not be disturbed on appeal. Dupre v. Hartford Accident & Indemnity Company, 200 So.2d 753 (La.App. 3 Cir. 1967); Poche v. Frazier, 232 So.2d 851 (La.App. 4 Cir. 1970).
When the court orders the examination of an injured employee under the provisions of LSA-R.S. 23:1123, and a report of the medical examiner is submitted as therein provided, that report constitutes only prima facie evidence of the facts therein stated, and any interested party ordinarily has the right to attack it before the facts stated in that report can be considered. In a case, however, where the facts stated in the report of the medical examiner are not essential to the outcome of the case, and the decision would be the same whether the report is or is not considered, then no useful purpose would be served by ordering that the case be reopened to permit the taking of additional testimony solely to attack that report. We have concluded that the report submitted by the court-appointed examining physician in the instant suit is not essential to a decision here, since the judgment rendered in this case would be the same whether that report is or is not considered. It is for that reason that the case is not being remanded for additional evidence.
Our ultimate conclusion is that there is no error in the judgment rendered by the trial court rejecting plaintiff’s demands.
The judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed.