0525

Michael Gary BROWN, Teresa Brown, and Philip N. Brown, a minor under the age of fourteen (14) years by Evelyn Whitlock McAlister, his Guardian *ad Litem*, Respondents, v. LA FRANCE INDUSTRIES, A DIVISION OF RIEGEL TEXTILE CORPORATION, Appellant.

(333 S. E. (2d) 348)

Court of Appeals

*Wm. Douglas Gray,* of *Watkins, Vandiver, Kirven, Gable & Gray,* Anderson, *for appellant.*

*C. Ben Bowen,* of *Abrams, Bowen & Parham,* Greenville, for respondents.

Heard April 22, 1985.

Decided July 15, 1985.

GOOLSBY, Judge:

In this workers' compensation case, La France Industries, a Division of Riegel Textile Corporation, appeals from a circuit court order affirming the award by the South Carolina Industrial Commission of maximum benefits to the claimants Teresa Brown and Philip N. Brown, the wife and child of Michael Gary Brown, deceased. We affirm.

The issues before us relate to the taking of a deposition after the scheduled hearing was concluded, to the admission of certain medical expert testimony, and to the sufficiency of the evidence to support the finding that Michael Gary Brown died as a result of an injury by accident arising out of and in the course of his employment.

Brown, age 23, worked intermittently at La France beginning in 1973. From April 28, 1977, until his death on October 29, 1979, Brown worked as a weaver for La France. Brown, who had a history of rheumatic fever as a child, suffered from valvular heart disease.

Prior to 1977, La France used "Gusken" looms. These shuttle-type machines were hand-changed by the weavers operating them. During a work shift, one weaver operated three looms.

In 1977, La France purchased several "SACM" looms. These looms were more technically advanced and contained no shuttles. La France gradually phased in the SACM looms as it eliminated the Gusken looms. At first, each weaver operated six SACM looms. Thereafter, each weaver's assignment would vary from seven to ten looms depending upon the weaving pattern being run.

Brown operated the SACM looms from January 13, 1978, to April 28, 1978, and again during the four-month period preceding his death on October 29, 1979. During this time, he was responsible for seven machines.

On October 29, 1979, Brown reported to work at La France at 4:00 p.m. Brown and his wife, who worked in the same

department, stopped work at 7:00 p.m. to have supper together. At approximately 7:30 p.m., ten minutes after returning to the SACM looms, Brown collapsed and died.

The claimants filed for maximum benefits under the South Carolina Workers' Compensation Act. They contended Brown died as a result of an accidental injury to his heart and circulatory system arising out of and in the course of his employment with La France. The claimants further contended they were entitled to compensation and funeral expenses in the amount of $82,645.

La France admitted Brown died in the course of his employment but denied his death arose out of his employment. Rather, La France contended Brown's death occurred as a result of natural causes and was not therefore a compensable accident.

The single commissioner, however, found Brown died as a result of an injury by accident arising out of and in the course of his employment. He also concluded the accident, resulting from unusual work conditions, produced unexpected severe emotional strain that aggravated a pre-existing heart condition and caused cardiac failure and sudden death.

The full commission reviewed the findings of the single commissioner and affirmed his award. The decision of the full commission was later affirmed by the circuit court.

This appeal followed.

I.

La France first contends the circuit court erred in sustaining the order of the full commission to the extent that it affirmed the single commissioner's order permitting the taking and submission of Dr. Joseph Hodge's deposition after the scheduled hearing was concluded.

The single commissioner heard the instant case in two separate hearings. He held the first hearing on September 3, 1980, and the second on October 17, 1980. At the conclusion of the second hearing, the single commissioner indicated the case was closed pending the taking and submission by the claimants of Dr. William W. Walker's deposition.

The claimants took Dr. Walker's deposition soon thereafter and submitted it to the single commissioner.

Sometime prior to January 20, 1981, however, and before the single commissioner rendered his decision, the claimants moved before the single commissioner for an order authorizing them to take the deposition of Dr. Joseph Hodge. The claimants argued they had inadvertently failed to request the case be left open so that they could take Dr. Hodge's deposition.

The single commissioner granted the claimants' motion and reopened the proceedings for the production of additional evidence. In allowing the claimants to take Dr. Hodge's deposition, the single commissioner also authorized La France "to take any expert medical testimony [it] desire[d] by deposition in response to Dr. Walker's deposition and the deposition of Dr. Hodge."

The full commission found no abuse of discretion in the single commissioner's order allowing the proceedings to be reopened for the purpose of taking Dr. Hodge's deposition. The circuit court affirmed.

In a workers' compensation case, the claimant must ██ assume the burden of establishing that the employee's death was proximately caused by an accident arising out of his employment. *Lorick v. South Carolina Electric & Gas Co.*, 245 S. C. 513, 141 S. E. (2d) 662 (1965). Where medical evidence is necessary to establish the employee's death resulted from accidental injury, the evidence must be offered by the testimony of skilled professionals. *See Arnold v. Benjamin Booth Co.*, 257 S. C. 337, 185 S. E. (2d) 830 (1971); *Mize v. Sangamo Electric Co.*, 251 S. C. 250, 161 S. E. (2d) 846 (1968). When the claimant inadvertently omits production of this proof, an opportunity should be afforded the claimant to supply such omission in the interests of justice. *Independent School District No. 1 of Tulsa County v. Albus*, 572 P. (2d) 554 (Okla. 1977).

We find the single commissioner did not depart from ██ the essential requirements of the law in reopening the case and in allowing the claimants the opportunity to present additional testimony. In South Carolina, it is well established that the decision of the trial judge to allow a party to reopen his case will not be reversed unless the opposing party was prejudiced thereby. *See* McKay, Robinson, and Tate, *Practice and Procedure*, 11 S.C.L.Q. 93 (1958).

A trial judge enjoys considerable latitude and discretion in these matters. *See Nash v. Gardner,* 232 S. C. 215, 1·01 S. E. (2d) 283 (1957); *Harley v. City of Spartanburg,* 230 S. C. 478, 96 S. E. (2d) 828 (1957); *Allen v. Watson,* 20 S.C.L. (2 Hill) 319 (1834). Similar discretion reposes with the single commissioner. *Exxon Co. V. Alexis,* 370 So. (2d) 1128 (Fla. 1978); *Stanley v. United Iron Works Co.,* 160 Kan. 243, 160 P. (2d) 708 (1945).

In the case before us, La France suffered no prejudice by the reopening of the claimants' case. La France was expressly authorized to present rebuttal testimony and failed to do so. We therefore find La France's contention to be without merit. *See Roman v. Broussard,* 255 So. (2d) 135 (La. App. (3rd) Cir. 1971); *Crump v. Fields,* 251 Miss. 864, 171 So. (2d) 857 (1965); *Croteau v. Harvey & Landers,* 99 N.H. 264, 109 A. (2d) 553 (1954); 100 C. J. S. *Workmen's Compensation* § 596 at 843 (1958); *cf. Holcombe v. Dan River Mills,* 333 S. E. (2d) 338 (S. C. Ct. App. 1985) (Industrial Commission Rule 67-31 relating to adjournment gives the single commissioner discretionary power with respect to the taking of additional testimony).

## II.

La France next contends the circuit court erred in finding Dr. Hodge qualified as a medical expert. It complains Dr. Hodge is not qualified in cardiology.

Whether a witness is qualified as an expert witness in a workers' compensation case is a matter resting largely within the discretion of the commission. *See State v. Caldwell,* 283 S. C. 350, 322 S. E. (2d) 662 (1984); *Prince v. Associated Petroleum Carriers,* 262 S. C. 358, 204 S. E. (2d) 575 (1974); *Micciche v. Forest Hill Cemetery Ass'n,* 46 Lack. Jur. 261, 55 Pa. D. & C. 620 (1945). To be competent as a medical expert, a witness must have acquired by reason of study or experience or both such knowledge and skill in the medical profession as to be better qualified than the fact finder to form an opinion on the particular subject of his testimony. *Botehlo v. Bycura,* 282 S. C. 578, 320 S. E. (2d) 59 (Ct. App. 1984). A witness in a workers' compensation proceeding "will be permitted to express his opinion on a medical question when it appears that he is qualified so to do by

reason of his training, experience, and practice." 100 C. J. S. *Workmen's Compensation* § 537e at 550 (1958). A physician is not incompetent to testify as an expert witness simply because he is not a specialist in the particular branch of medicine involved in the case. *Hill v. Carolina Power & Light Co.*, 204 S. C. 83, 28 S. E. (2d) 545 (1943); *see* 100 C. J. S. *Workmen's Compensation* § 537e at 550 (1958). The fact that the witness is not a specialist in the particular branch involved affects only the weight of the witness's testimony and affords no basis for completely rejecting it. *Hill v. Carolina Power & Light Co., supra.*

Dr. Hodge is a medical doctor and surgeon specializing in general and thoracic surgery since 1952. He has treated people for cardiovascular problems and has written for publication a number of articles relating to cardiovascular surgery.

We find no abuse of discretion in qualifying Dr. Hodge as a medical expert in the area of cardiology.

### III.

La France further contends that the testimony obtained from both Dr. Walker and Dr. Hodge was based upon improper hypothetical questions.

### A.

La France objected to the hypothetical question asked of Dr. Walker because it indicated Brown was under more pressure to perform and his work load was heavier than before. Its exception claims the hypothetical question embraced facts not supported by the evidence. We do not agree.

Opinion testimony of an expert witness may be based upon a hypothetical question. *Young v. Tide Craft, Inc.*, 270 S. C. 453, 242 S. E. (2d) 671, 1 A. L. R. 4th 394 (1978). The hypothetical question, however, should be based upon facts supported by the evidence. *Id.;* 31 Am. Jur. (2d) *Expert and Opinion Evidence* § 36 at 537 (1967); *see Clark v. Ross*, ____ S. C. ____, 328 S. E. (2d) 91 (Ct. App. 1985).

Here, the testimony of Brown's wife and of numerous witnesses disclosed Brown was under more pressure than before.

Brown's wife testified that after the changeover to the SACM looms, her husband "was under constant pressure"

and "was always upset and nervous over the job." She stated that she often helped him run the looms "because he was always upset about it...."

In addition, several weavers in Brown's department testified it was more difficult "to make production" on the new looms. For example, Betty Mashburn, a weaver for ten years testified that after the changeover, she "had to work harder." When asked why she later resigned, she stated "it was just ... hard on you physically and mentally ... trying to keep up."

Also, on the day preceding his death Brown and thirty-two other employees signed a petition directed to La France in which they expressed dissatisfaction with their "unreasonable work loads."

The record, therefore, contains ample evidence to show Brown, because of the installation of the SACM looms, was under additional pressure and was having to work harder.

La France also complained about the failure of the hypothetical question directed to Dr. Walker to include sufficient information concerning the difference "in the work ... between the [old] looms and the [new] looms that [Brown] was running." Its exception states the hypothetical question did not include sufficient facts to form the basis for an expert opinion. Again, we disagree.

A hypothetical question need not include all the details. It is sufficient that substantially all material facts necessary to the formation of an intelligent opinion as to causation are included in the hypothetical question and are supported by the evidence. *Chapman v. Foremost Dairies, Inc.*, 249 S. C. 438, 154 S. E. (2d) 845 (1967).

Here, sufficient facts were included in the hypothetical question to give Dr. Walker an understanding of the difference between the work required of a weaver operating an older Gusken loom and the work required of a weaver operating a newer SACM loom. Dr. Walker was told Brown worked three old looms but from six to nine new looms. The new looms, unlike the old looms, had no shuttles. Brown and the other weavers had difficulty keeping the new looms operating. In addition, he was told that the new looms required almost continuous work and that the yarn broke more frequently with the new looms.

## B.

La France complains about the hypothetical question asked Dr. Hodge by claimants' counsel because it asked him to assume Brown had given no indication of illness on the date of his death and because it failed to include sufficient information about the different "work levels" associated with operating the Gusken and SACM looms. These contentions lack merit.

Regarding its first contention, La France maintains there was evidence Brown came to work ill the day he died because Brown cut firewood before reporting to work and told a fellow worker he was exhausted. La France contends the hypothetical question should have included the fact Brown was ill. We disagree.

■ Simply because one is exhausted from cutting firewood does not mean the person is ill.

Moreover, Brown's wife denied Brown was either tired or exhausted before he went to work that day. She also denied he cut any firewood before going to work, although she admitted he "chopped one or two blocks."

■ A party asking a hypothetical question need not employ the opposing party's version of the facts when the facts are in dispute. 32 C. J. S. *Evidence* § 551(2) at 529 (1964); *see Shannon v. Kaylor*, 133 Ga. App. 514, 211 S. E. (2d) 368 (1974). Indeed,

> [t]he interrogator may frame his question on any theory which can reasonably be deduced from the evidence and select as a predicate therefor such facts as the evidence proves or reasonably tends to establish or justify. And thus he may predicate the question upon a statement of facts detailed by the witnesses for one of the parties. . . .

31 Am. Jur. (2d) *Expert and Opinion Evidence* § 56 at 562-63 (1967); 32 C. J. S. *Evidence* § 551(2) at 523 (1964).

■ The hypothetical question, therefore, was not improper because it mentioned Brown was not ill when he reported to work.

Additionally, La France suffered no prejudice from the failure of claimants' counsel to include the disputed fact in its hypothetical question.

We note La France asked Dr. Hodge on cross-examination to assume Brown complained to fellow workers that "he was exhausted" from cutting firewood and that he "didn't feel like going to work." Dr. Hodge answered that he could not say one way or the other whether cutting firewood contributed to Brown's death. Thus, whether Brown's cutting of firewood, if he did so, contributed to his death was an issue for the fact finder to resolve.

As to La France's second contention regarding the hypothetical question addressed by claimants' counsel to Dr. Hodge, sufficient facts were included in the hypothetical question for Dr. Hodge to appreciate the differences in the "work levels" between the Guskin and SACM looms.

Counsel suggested to Dr. Hodge that from July 11, 1977, until January 13, 1978, Brown "was running what was referred to as the old looms ... a loom that utilized a shuttle" and "ran 104 picks per minute, meaning the actual turning over of the lays to weave in the cloth." He referred to the SACM looms as an automated loom ... [that] did not utilize a shuttle" and "ran 160 picks per minute." He further stated that the workload per weaver on the old looms was three looms and the workload on the SACM looms was from seven to ten looms.

## IV.

La France also questions the sufficiency of the medical testimony to establish a causal connection between Brown's death and his employment. It argues that the testimony of the physicians "did not comply with the 'most probable' rule of evidence" relating to medical opinion testimony.

The rule established in this state is "when the testimony of medical experts is relied upon to establish a causal connection between an accident and subsequent ... death, in order to establish such, the opinion of the experts must be at least that the ... death 'most probably' resulted from the accidental injury." *Lorick v. S. C. Electric & Gas Co.*, 245 S. C. 513, 525, 141 S. E. (2d) 662, 668 (1965). Where one relies upon medical testimony alone to show causal connection, it is not sufficient that the death "possibly" or "could have" or "might have" resulted from the injury. *Bridges v. Housing Authority, City of Charleston*, 278 S. C. 342, 345, 295 S. E. (2d) 872, 874 (1982).

Dr. Walker testified that he felt "stress [was] a major factor in [Brown's] death. A letter from Dr. Walker addressed to claimants' counsel and admitted in evidence mentioned Brown "was under a great deal of stress at work" and that "undue stress was most probably a very important and incisive factor in ... Brown's sudden death."

When questioned whether he had an opinion as to the cause of Brown's death, Dr. Hodge responded, "I think the gentleman died of cardiac failure incident to rheumatic valvular disease, incident to stress, anxiety and physical exertion beyond the endurance of the myocardium to sustain this man's life ... This man in order to meet production had to run to do his job ... Physically and emotionally, the sustained effort of going from three looms to seven to ten looms, the physical exertion of not being able to meet that, ... I think it really was the straw that broke the camel's back."

Moreover, numerous employees testified concerning the operations of the Gusken and SACM looms, the dissatisfaction they and Brown felt with the workloads, and the added stress they each sensed to make production on the new looms.

We hold this testimony sufficient to establish causal connection. *See Poulos v. Pete's Drive-In No. 3*, _____ S. C. _____ , 325 S. E. (2d) 583 (Ct. App. 1985).

## V.

La France's final contention is that Brown's death did not arise out of his employment.

A heart attack suffered by an employee constitutes a compensable accident within the meaning of the Workers' Compensation Act if it is induced either by unexpected strain or overexertion in the performance of the duties of his employment or by unusual and extraordinary conditions in employment. *Poulos v. Pete's Drive-In No. 3*, *supra*. This is true even though there is a pre-existing pathology that may have been a contributing factor. *Kearse v. S. C. Wildlife Resources Dept.*, 236 S. C. 540, 115 S. E. (2d) 183 (1960).

There is substantial evidence in the record to show that Brown, who, as we noted, suffered from valvular

heart disease, met with unexpected strain and contended with overexertion in connection with his work as a weaver at La France and that this strain and overexertion, manifesting themselves as stress, contributed to his death from cardiac failure. *See Poulos v. Pete's Drive-In No. 3, supra; McDonald v. International Paper Co.*, 406 So. (2d) 582 (La. 1981); *Klimas v. Trans Caribbean Airways, Inc.*, 10 N.Y. (2d) 209, 219 N.Y.S. (2d) 14, 176 N.E. (2d) 714 (1961): *Coleman v. Andrew Jergens Co.*, 65 N.J. Super. 592, 168 A. (2d) 265 (1961); 1B Larson, *The Law of Workmen's Compensation* § 42.21 at 7-590 (1980). Our discussion heretofore of the facts involved in this case and of the opinions of the medical experts reveals as much.

We therefore uphold the finding that Brown's death was due to an injury by accident arising out of and in the course of his employment.

Affirmed.

GARDNER and CURETON, JJ., concur.