**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

Barbara Gaines, Respondent,

v.

Joyce Ann Campbell, Appellant.

Appellate Case No. 2013-002367

Appeal From Greenville County
Edward W. Miller, Circuit Court Judge

Unpublished Opinion No. 2015-UP-432
Heard June 3, 2015 – Filed August 19, 2015

**REVERSED**

Marcus Kirk McGarr, of Marcus K. McGarr, PA, of
Greenville, for Appellant.

John Robert Peace, of John Robert Peace, PA, of
Greenville, for Respondent.

**PER CURIAM:** Joyce Ann Campbell appeals the trial court's order granting
Barbara Gaines's motion for a new trial. Campbell asserts the trial court erred in
granting the new trial because its decision was based on the following
misapprehensions of law: (1) a defendant must present an expert to contradict an

opposing expert's testimony; (2) cross-examining an expert amounts to the pitting of witnesses; (3) an expert cannot be cross-examined on other "possible" causes of an injury; and (4) a closing argument with no direct appeal to any specific juror violates the rule against appealing to a juror. Because the trial court's order granting Gaines's motion for a new trial was controlled by an error of law, we reverse.

## FACTS/PROCEDURAL HISTORY

This appeal arises out of a car accident in which Campbell rear-ended Gaines in January 2010. While Campbell admitted she was negligent and at fault in causing the accident, she asserted her actions did not proximately cause the damages alleged by Gaines. A trial was held in August 2013.

During the trial, Campbell asked the jury to return a verdict in the amount of Gaines's emergency room bill, which totaled $3,941, while Gaines sought compensation for all of her medical bills, including a spinal surgery she had after the accident, and an award for her physical pain, suffering, and emotional distress. The stipulated total of Gaines's medical bills was $77,966.56. After deliberating, the jury returned a verdict for Gaines in the amount of $3,941.

After the trial, Gaines moved for a new trial, arguing the verdict was contrary to both the law and the evidence of the case. After a hearing on Gaines's motion, the trial court invoked the thirteenth juror doctrine and granted a new trial, finding an award of damages for only the emergency room bill to be grossly inadequate and unsupported by the evidence. This appeal followed.

## LAW/ANALYSIS

We note at the outset the trial court's order granting Gaines's motion for a new trial conflated the standards for a new trial pursuant to the thirteenth juror doctrine and a new trial absolute. We address the two standards below as well as the language of the trial court's order.

A trial court must grant a new trial absolute if the amount of the verdict is grossly inadequate or excessive and clearly indicates the figure reached was the result of prejudice, passion, caprice, or some other improper motive. *O'Neal v. Bowles*, 314 S.C. 525, 527, 431 S.E.2d 555, 556 (1993). However, the jury's determination of damages is entitled to substantial deference. *Vinson v. Hartley*, 324 S.C. 389, 404,

477 S.E.2d 715, 723 (Ct. App. 1996). The trial court must explain the reasons for granting or denying new trial motions based on inadequacy or excessiveness of the verdict. *Cf. Pelican Bldg. Ctrs. of Horry-Georgetown, Inc. v. Dutton*, 311 S.C. 56, 61, 427 S.E.2d 673, 676 (1993) (stating compelling reasons must be given to justify invading the jury's province). "The decision to grant a new trial absolute . . . rests in the sound discretion of the trial court and ordinarily will not be disturbed on appeal." *Becker v. Wal-Mart Stores, Inc.*, 339 S.C. 629, 635, 529 S.E.2d 758, 761 (Ct. App. 2000). A trial court abuses its discretion if its conclusions are controlled by an error of law or if its findings are wholly unsupported by the evidence. *Id.*

On the other hand, under the thirteenth juror doctrine, the trial court may grant a new trial if it finds the verdict is unsupported by the evidence. *Folkens v. Hunt*, 300 S.C. 251, 254, 387 S.E.2d 265, 267 (1990). "This ruling has also been termed granting a new trial upon the facts." *Id.* Basically, the court, "as the thirteenth juror[,] 'hangs' the jury." *Id.* "Neither [the court] nor the jury is required to give reasons for this outcome. Similarly, because the result of the 'thirteenth juror' vote by the [court] is a new trial rather than an adjustment to the verdict, no purpose would be served by requiring the trial [court] to make factual findings." *Id.* When acting as the thirteenth juror, the trial court "possess[es] the veto power to the Nth degree" and is presumed to recognize and appreciate this responsibility and exercise its discretion with fairness and impartiality. *Worrell v. S.C. Power Co.*, 186 S.C. 306, 313-14, 195 S.E. 638, 641 (1938). "A trial [court's] order granting or denying a new trial upon the facts will not be disturbed unless [its] decision is wholly unsupported by the evidence, or the conclusion reached was controlled by an error of law." *Vinson*, 324 S.C. at 403, 477 S.E.2d at 722.

In the instant case, the trial court gave several reasons for granting Gaines's motion, and it found the jury's award of damages "grossly inadequate," which are typically characteristics of a new trial absolute. However, at the end of the order, the court discussed case law on the thirteenth juror doctrine and stated it was "invoking the 'Thirteenth Juror Doctrine'" to grant a new trial. Thus, in light of this express wording, we will review this case under the thirteenth juror doctrine.

As discussed above, the trial court is not required to explain its rationale for granting a new trial under the thirteenth juror doctrine. *Folkens*, 300 S.C. at 254, 387 S.E.2d at 267. However, if the trial court chooses to do so, this court will review the reasons provided by the trial court. *See Lane v. Gilbert Constr. Co.*, 383 S.C. 590, 597-600, 681 S.E.2d 879, 883-84 (2009) (reviewing the trial court's

rationale for granting a new trial despite the fact the trial court granted the new trial under the thirteenth juror doctrine and was not required to provide any reasons for the outcome); *Youmans v. S.C. Dep't of Transp.*, 380 S.C. 263, 282, 287-88, 670 S.E.2d 1, 10, 13 (Ct. App. 2008) (holding that despite the discretion given the trial court by the thirteenth juror doctrine, it could not grant a new trial based on the brevity of the jury deliberations); *id.* at 282, 670 S.E.2d at 10 ("[G]ranting a new trial due to suspicions of deliberation quality is a flagrant deviation from premising a new trial upon the facts.").

In the present case, the court gave several reasons for granting Gaines's motion. We discuss these reasons below.

## I.    Expert Witness Requirement

Campbell argues the trial court erroneously believed she was required to present expert witness testimony to contradict an opposing expert's testimony and failed to consider the fact that the credibility of the experts' statements was at issue.

We agree with Campbell that she was not required to present her own expert witness as the jury could choose not to believe the testimony of Gaines's expert witnesses.  *See Terwilliger v. Marion*, 222 S.C. 185, 188, 72 S.E.2d 165, 166 (1952) (finding the fact that testimony is not directly contradicted does not render it undisputed because questions remain on the inherent probability of the testimony and the credibility of the witness).  However, we disagree with Campbell's claim that the trial court was requiring her to produce her own expert witness when it stated in its order that she "did not present any evidence to refute [Gaines's] experts and relied solely on [Campbell's] cross examination of the witnesses to contest the proximate cause issue."  It appears, in making this statement, the trial court was merely recounting the events of the trial.  The court never stated Campbell was required to present her own expert witness, and, furthermore, it agreed when Campbell's attorney stated during the new trial hearing that he did not have to bring in an expert.  Accordingly, we disagree with Campbell's assertion of error.

## II.    Pitting of Witnesses

Campbell next contends the trial court erred when it found her cross-examination of Dr. Christie B. Mina objectionable because Campbell asked Dr. Mina to comment on Gaines's veracity and asked Dr. Mina if she was calling the emergency room physicians "quacks."  Campbell argues she needed to question

Dr. Mina about the discrepancies in Gaines's testimony regarding her prior neck injuries because Dr. Mina had agreed it would be difficult to connect an incident to an injury, absent the patient giving an accurate and proper history. The trial court found Campbell's cross-examination of Dr. Mina objectionable because Campbell "repeatedly and argumentatively questioned Dr. Mina about the veracity of other witnesses," which "was in clear violation of South Carolina's long standing and basic rule prohibiting the 'pitting' of witnesses."

"It is improper to cross-examine in a way that requires a witness to attack another witness's credibility." *State v. Benning*, 338 S.C. 59, 63, 524 S.E.2d 852, 855 (Ct. App. 1999); *see also Burgess v. State*, 329 S.C. 88, 91, 495 S.E.2d 445, 447 (1998) ("No matter how a question is worded, anytime a solicitor asks a defendant to comment on the truthfulness or explain the testimony of an adverse witness, the defendant is in effect being pitted against the adverse witness. This kind of argumentative questioning is improper."). "[A]n expert is not to comment on the veracity of another witness's statements." *S.C. Dep't of Soc. Servs. v. Lisa C.*, 380 S.C. 406, 418, 669 S.E.2d 647, 653 (Ct. App. 2008).

In the present case, Campbell informed Dr. Mina that Gaines had stated during a deposition she had never had a problem with her neck significant enough to seek medical treatment before the accident. Subsequently, Campbell asked Dr. Mina to examine Gaines's medical records, which showed Gaines experienced neck pain from 1987 to 2009. Campbell proceeded to question Dr. Mina about Gaines's statement in the following manner:

> Q. Would you agree that her history was not true, with regard to what she told me in her deposition?
>
> A. That particular answer appears to not have been true.
> . . . .
>
> Q. And again, when you compare that along with these other records, does it appear that what the history Ms. Gaines gave me in her deposition would appear to be incorrect and/or false?
>
> A. Yes.
> . . . .

> Q. But if she's capable of telling someone, while under
> oath, I've never had a problem with that neck -- and
> we've seen a discrepancy with her saying I was knocked
> out in the accident versus saying to the ER I was never
> knocked out -- is it possible that she could be giving
> histories to fit whatever she wanted to fit?  It is possible?

> A. Anything is possible, but unlikely.[1]

While we acknowledge this line of questioning is markedly different from a situation in which a witness is asked to pit her own credibility against that of another testifying witness, we find the trial court correctly determined it was improper to question Dr. Mina on the veracity of Gaines's deposition statements.

However, we find little harm in this line of questioning as Dr. Mina ultimately stated during cross-examination that Gaines "told [her] the truth" and was a "pretty reliable historian" because Gaines told her when "not under oath, when she was not obliged to do so, the truth about her previous long neck history."  These statements are important as they show Dr. Mina was aware of Gaines's medical history when she determined Gaines's surgery was more probably than not necessitated by the car accident.

### III.    Cross-Examination of Expert Witnesses on Proximate Cause

Campbell also asserts the trial court erred when it found Campbell's cross-examination of both witnesses regarding the issue of proximate cause objectionable because Campbell asked them whether "it was 'possible' for a disputed intervening event to have caused the necessity for surgery."  The court believed this line of questioning was inappropriate because South Carolina law "requires that opinion testimony by medical experts must be to a reasonable degree of medical certainty and more probably than not."  However, Campbell believes the practice of using hypothetical scenarios to cross-examine witnesses is an appropriate and "viable means of cross-examination."  We agree with Campbell.

---

1 Gaines's attorney objected after Dr. Mina answered the last question, stating Dr. Mina was "not qualified as an expert in any legal matter or credibility of witnesses."

"When one relies solely upon the opinion of medical experts to establish a causal connection between the alleged negligence and the injury, the experts must, with reasonable certainty, state that in their professional opinion, the injuries complained of most probably resulted from the defendant's negligence." *Ellis v. Oliver*, 323 S.C. 121, 125, 473 S.E.2d 793, 795 (1996). When expert testimony is the only evidence of proximate cause relied upon, the testimony "must provide a significant causal link between the alleged negligence and the plaintiff's injuries, rather than a tenuous and hypothetical connection." *Id.*

However, "[o]pinion testimony of an expert witness may be based upon a hypothetical question." *Brown v. La France Indus.*, 286 S.C. 319, 326, 333 S.E.2d 348, 352 (Ct. App. 1985). The hypothetical question must be based on facts supported by the evidence. *Id.* Counsel posing the hypothetical may, however, frame the question on any theory that "can reasonably be deduced from the evidence and select as a predicate therefor such facts as the evidence proves or reasonably tends to establish." *Id.* at 328, 333 S.E.2d at 353; *see Wilder v. Eberhart*, 977 F.2d 673, 676 (1st Cir. 1992) (stating the defendant "may produce other 'possible' causes of the plaintiff's injury" in proving his alleged negligence was not the legal cause of the plaintiff's injury); *id.* at 676-77 (holding that requiring a defendant to identify a specific cause to a medical probability standard when rebutting the plaintiff's prima facie case would improperly shift the burden to the defendant); *see, e.g.*, *McKnight v. State*, 378 S.C. 33, 40-41, 661 S.E.2d 354, 357-58 (2008) (discussing the fact that the State's expert witness admitted there were other possible causes of death and the defense's two expert witnesses testified regarding possible alternative causes of death); *see also Ala. Power Co. v. Bruce*, 96 So. 346, 348 (Ala. 1923) (finding the "question was relevant and the answer permissible" when the plaintiff cross-examined the defendant's expert witness using a hypothetical question based on facts introduced in evidence and sought an opinion as to whether the existence of such facts would cause the plaintiff's appendicitis and ovarian condition and the witness replied it was possible).

In this case, Campbell asked both of Gaines's expert witnesses whether it was possible an injury Gaines sustained while mulching her yard after the car accident could have been the reason for Gaines's surgery, to which one expert replied, "It's possible." Campbell also asked that expert whether it was possible the car accident had nothing to do with the surgery but instead Gaines's arthritis had necessitated the surgery, and the expert again replied, "It's possible." At the close of Gaines's case, Campbell moved for a directed verdict. After denying the motion, the trial

court informed Campbell she "had the opportunity to present evidence to show that your claims of the other two or three things that you think possibly could have caused this injury, you could have put evidence -- you could have brought evidence in, if it existed." It further stated, "But you cannot use -- you can't come in here and try to use your opponent[']s expert and not live up to the same standard. You can't require him to have more probably than not to a reasonable degree of medical certainty and you just mere possibility."

During a hearing on Gaines's motion for a new trial, Campbell's attorney stated that the jury could have found that Gaines's surgery occurred as the result of a "natural . . . worsening of [her] pre-existing" condition. The trial court responded, "Was there any evidence in the record to show that? The only opinion testimony was that this accident caused it." When Campbell referenced the mulching accident that occurred in between the car accident and the surgery, the trial court referred to the mulching accident as "[a] disputed supposed intervening cause where there was no testimony to what [it] consider[ed] to be the required standard to say that it more probably than not caused it." It is clear the trial court failed to consider the testimony elicited on cross-examination when granting Gaines's new trial motion as it found the evidence that required a verdict to compensate Gaines for her surgery to be "[t]he only competent evidence admitted at trial."

In its new trial order, the trial court found this type of questioning "objectionable" and stated it "should have . . . been excluded." However, we believe Campbell was permitted to pose hypothetical questions to the expert witnesses to challenge the experts' testimony that the car accident necessitated the surgery. *See Ala. Power Co.*, 96 So. at 348 (permitting cross-examination of the expert witness on other possible causes of the plaintiff's medical conditions). These questions were supported by the evidence as Campbell produced medical records in which Gaines complained of arthritis and described suffering an injury when she fell while mulching. *See Brown*, 286 S.C. at 326, 333 S.E.2d at 352 (stating hypothetical question must be based on facts supported by the evidence).

Thus, this finding by the trial court was erroneous. Because the trial court failed to consider these other possible causes of Gaines's injury when weighing the evidence as the thirteenth juror, we find its order was controlled by an error of law. *See Vinson*, 324 S.C. at 403, 477 S.E.2d at 722 ("A trial [court's] order granting or denying a new trial upon the facts will not be disturbed unless [its] decision is wholly unsupported by the evidence, or the conclusion reached was controlled by an error of law.").

## IV. Appealing to the Jury

Finally, Campbell asserts the trial court erred when it found she violated Rule 43(i), SCRCP, by personally addressing and appealing to the jury during closing arguments.  We agree.

Rule 43(i) states, "Counsel shall not address or refer to by name any member of the jury he is addressing, or otherwise personally appeal to any member thereof."  *See, e.g.*, *City of Columbia v. Myers*, 278 S.C. 288, 289, 294 S.E.2d 787, 788 (1982) (finding a statement in closing argument that the failure to render a verdict for the City would cause the damages to be paid from tax funds had no relevance to the merits of the case, "constituted an appeal to the self-interest of the jurors as taxpayers," and was "of such a prejudicial nature as to require reversal"); *Wall v. Keels*, 331 S.C. 310, 320-21, 501 S.E.2d 754, 759 (Ct. App. 1998) (finding a party's statement during closing argument that a suit against the defendant, Santee Electric Cooperative, was "*a suit against the members of the Co-op*" appealed to the economic self-interest of the cooperative members who were sitting on the jury and who would ultimately bear the cost of any verdict against the defendant). Additionally, "[i]n a closing argument to the jury, an attorney may not make such remarks which are unfairly calculated to arouse passion or prejudice."  *Gathers v. Harris Teeter Supermarket, Inc.*, 282 S.C. 220, 231, 317 S.E.2d 748, 755 (Ct. App. 1984).

In the instant case, the trial court took exception to several comments by Campbell's attorney, including (1) "I request jury trials in Greenville County because when I do, I know that my Greenville County jurors are going to be fair and decent to me.  And be honest with themselves with regard to what a case is about."; (2) "[Y]ou're bright enough and have the brains enough to know that that's what I said on Monday."; and (3) "[Y]ou guys are not so foolish or dumb and it's disingenuous to pretend like you are, that you didn't hear that the doctor says, She's got a bone spur that is squishing on that nerve that's causing a problem and makes it go down her arm."

We find Campbell is correct in her assertion that the above statements do not violate Rule 43(i).  Counsel did not "address or refer to by name any member of the jury" nor did he "personally appeal to any member."  Rule 43(i), SCRCP. Furthermore, while counsel's statement that his "Greenville County jurors are going to be fair and decent to [him]" could possibly be construed as "unfairly

calculated to arouse passion or prejudice," *see Gathers*, 282 S.C. at 231, 317 S.E.2d at 755, the trial court subsequently instructed the jury to "consider the evidence calmly and with measured reason, without passion, prejudice, bias or emotion." A similar instruction was deemed to have cured any error from the statements made during closing arguments in *Gathers*. *See id.* at 231-32, 317 S.E.2d at 755-56 (finding that plaintiff's attorney's statement during closing arguments in which he told the jury not to "think too hard with your head but to think with your heart" was cured by the trial court's instruction that the jury "cannot act through emotion" but needed to "weigh the evidence and do what is just"). Accordingly, the trial court's finding was in error.

## CONCLUSION

Although the trial court correctly determined that questioning Dr. Mina regarding Gaines's veracity was improper, we find the trial court's new trial order was controlled by an error of law. *See Vinson*, 324 S.C. at 403, 477 S.E.2d at 722 ("A trial [court's] order granting or denying a new trial upon the facts will not be disturbed unless [its] decision is wholly unsupported by the evidence, or the conclusion reached was controlled by an error of law."). The trial court's determination that Campbell could not cross-examine Gaines's experts on other possible causes of Gaines's injury and its finding that Campbell violated Rule 43(i) by personally appealing to the jury were incorrect. Furthermore, if the trial court had believed Campbell's hypothetical questions were permissible, it could have considered other "possible" causes of Gaines's injury when it weighed the evidence as the thirteenth juror. Based on the foregoing reasons, the trial court's order granting a new trial is

**REVERSED.**

**THOMAS, KONDUROS, and GEATHERS, JJ., concur.**