524 S.E.2d 852

**The STATE, Respondent,**

v.

**Terrell BENNING, Appellant.**

**No. 3081.**

Court of Appeals of South Carolina.

Heard Nov. 3, 1999.

Decided Dec. 6, 1999.

Assistant Appellate Defender Robert M. Pachak, of SC Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott and Assistant Attorney General Caroline Callison Tiffin, all of Columbia; and Solicitor Barbara R. Morgan, of Aiken, for respondent.

GOOLSBY, Judge:

Terrell Benning was indicted on one count of first degree criminal sexual conduct (CSC) with a minor and one count of committing a lewd act on a child. The jury acquitted him on the CSC charge and convicted him on the lewd act charge. The trial judge sentenced Benning to fifteen years in prison and refused, upon reconsideration, to reduce the sentence. Benning asserts on appeal that the solicitor attempted to pit Benning's testimony against the testimony of two of the state's witnesses and that the trial judge improperly considered the CSC charge during sentencing on the lewd act charge. We affirm.

The charges against Benning concern allegations he sexually abused his girlfriend's ten-year-old daughter (Victim). On occasion, Benning watched Victim and her younger brother while Victim's mother worked the 7:00 p.m. to 7:00 a.m. shift.

On October 10, 1996, Victim's mother left work before midnight because she felt ill. When she arrived home and entered her bedroom, she found Victim and Benning together in bed. Upon Victim's mother's arrival, both Victim and Benning jumped out of bed and Benning fell onto the floor. Victim's mother could see Victim's nightgown was pulled up and her underwear was pulled down. Victim's mother also saw Benning's shorts were "halfway down" his body and he was wearing no underwear. Victim's mother told Victim to go to her room and asked Benning, "What in the hell is [Victim] doing in my bedroom?" Victim's mother did not give Benning a chance to explain. Instead, she drove to her mother's home nearby to call the police because Victim's mother did not have her own phone. Benning apparently left the house at this time and did not return until the police arrived.

At trial, Victim testified Benning touched her with his hands and twice put his "private" in her "private." Victim demonstrated the act with anatomically correct dolls, but the record does not reflect whether she demonstrated vaginal or anal penetration.

The first officer on the scene that night testified Victim said when she entered her mother's room to check the time, Benning pulled her into bed, pulled down her panties, and "placed his thing in her butt." The investigating officer

testified Victim said, in her own words, Benning sexually assaulted her, but no penetration occurred.

The doctor who examined Victim at the hospital on the night in question was unavailable at the time of trial but, according to his notes, he found no damage to Victim's vagina, hymen, or anus during his examination. The doctor did note, however, that a Woods Lamp examination revealed a "positive uptake of light in the area where patient says he pushed his penis against, [which] seems consistent with sperm. There is no uptake in th[e] area of the vagina or the anus, only in the lower part of the back just above the upper buttocks." A second doctor examined Victim a month later and testified he found an absence of part of her hymen, leading him to conclude she suffered chronic sexual abuse.

## I.

Benning first argues the trial judge erred in overruling his objection to the solicitor's attempts to pit Benning's testimony against that of Victim's mother and aunt. He further contends the error cannot be considered harmless because the case centered primarily on the credibility of the witnesses.

During Benning's cross examination, the assistant solicitor attempted to pit Benning against Victim's aunt regarding a telephone conversation Victim's aunt testified took place after the incident in question. Victim's aunt claimed Benning called her collect and told her, "You know how little girls are.... She came in the room and got in the bed with me." Benning, in contrast, testified he attempted several collect calls to Victim's aunt the day after the incident in question, but that he never spoke to Victim's aunt. The assistant solicitor then asked Benning, "[s]o, her testimony on there is a lie?" Benning's attorney objected on the grounds of pitting, but the trial judge overruled the objection.

Without receiving an answer to that question, the assistant solicitor immediately attempted to pit Benning against Victim's mother. Victim's mother testified she found Benning and Victim partially undressed in bed together. The assistant solicitor queried Benning about Victim's mother's testimony asking, "[a]nd you're saying under oath on the stand that none

of that is true?" Again, the court overruled Benning's counsel's objection, but again the question went unanswered.

■■■■ It is improper to cross-examine in a way that requires a witness to attack another witness's credibility.[1] The mere asking of an improper question is not necessarily prejudicial, however, where no evidence is introduced as a result.[2]

We agree the trial judge erred in overruling Benning's objections to the solicitor's questions. We must determine, however, whether the error prejudiced Benning.[3]

■■■■ Regarding the attempt to pit Benning against Victim's mother, Benning never answered the question. Without answering the question, Benning did not attack the veracity of Victim's mother's testimony. We, therefore, cannot conclude Benning suffered unfair prejudice by the attempt to pit his testimony against the testimony of Victim's mother.

---

1. *Burgess v. State*, 329 S.C. 88, 91, 495 S.E.2d 445, 447 (1998) ("No matter how a question is worded, anytime a solicitor asks a defendant to comment on the truthfulness or explain the testimony of an adverse witness, the defendant is in effect being pitted against the adverse witness. This kind of argumentative questioning is improper."); *State v. Bryant*, 316 S.C. 216, 447 S.E.2d 852 (1994); *State v. Brown*, 297 S.C. 27, 374 S.E.2d 669 (1988); *State v. Sapps*, 295 S.C. 484, 369 S.E.2d 145 (1988). Particularly when credibility is the crucial issue in a case, improper pitting of witnesses is prejudicial and cannot be deemed harmless. *Sapps*, 295 S.C. at 486, 369 S.E.2d at 146; *Brown*, 297 S.C. at 29, 374 S.E.2d at 670.

2. *State v. Watts*, 320 S.C. 377, 465 S.E.2d 359 (Ct.App.1995) (where objectionable questions resulted in no introduction of evidence, defendant suffered no prejudice); *see also Gainey v. Tyner*, 259 S.C. 629, 631, 193 S.E.2d 525, 526 (1972) (asking of an improper question did not result in prejudice where the witness's response to the question, after the trial judge overruled counsel's objection, was "I don't know"); *cf. Bryant*, 316 S.C. at 221, 447 S.E.2d at 855 ("While the solicitor attempted to pit Bryant's testimony against the officer's testimony earlier in the cross-examination, no actual pitting occurred until Bryant understood the question and began to answer."); *Brown*, 297 S.C. at 29, 374 S.E.2d at 670 (same); *Sapps*, 295 S.C. at 485, 369 S.E.2d at 145 (same).

3. *See State v. Hariott*, 210 S.C. 290, 298, 42 S.E.2d 385, 388 (1947) ("It is a rule of practically universal application in appellate procedure that an accused cannot avail himself of error as a ground for reversal where the error has not been prejudicial to him.").

■ As to the attempt to pit Benning against Victim's aunt, we find the testimony dealt with a collateral matter. Whether or not the conversation Victim's aunt references occurred is of no real importance to the question of Benning's guilt. Furthermore, Benning never answered the solicitor's question and, therefore, was not prejudiced when the solicitor asked it.

We conclude the questions were improper and the trial judge should have sustained Benning's objections. Because Benning never answered the questions posed by the solicitor, however, no prejudice resulted from the solicitor's attempts to pit Benning's testimony against the testimony of Victim's mother and aunt.

## II.

■ Benning also complains the trial judge erred in refusing his request to reconsider and reduce his fifteen-year sentence for committing a lewd act on a child because the court improperly considered the CSC charge for which the jury found Benning not guilty.

After the jury returned its verdict, the trial judge stated he would have found Benning guilty of the CSC charge and then sentenced Benning to the maximum penalty for the lewd act charge. At the motion to reconsider Benning's sentence, the trial judge stated he remembered the facts of the case and again stated he would have found Benning guilty of the CSC charge. He also instructed Benning's counsel to tell Benning, "if he'd gotten convicted of the [CSC charge], . . . I'd have given just twice what I gave him. He'd [have] done eighty-five percent. If that sentence carried thirty years, I'd give him thirty years."

■ Here, the trial judge heard the evidence and observed the witnesses during trial. Substantial evidence exists in the record to support Benning's conviction on the lewd act charge. We will not disturb a sentence, provided it is within the limits permitted by law, unless the trial judge sentenced the defendant as a result of partiality, prejudice, oppression, or corrupt motive.[4]

---

4. *State v. Goodall,* 221 S.C. 175, 69 S.E.2d 915 (1952).

We find the trial judge appropriately sentenced Benning based on the evidence presented at trial.[5]

**AFFIRMED.**

CONNOR, J., concurs in a separate opinion.

ANDERSON, J., concurs.

CONNOR, Judge (concurring):

I concur in the result reached by the majority. I agree with the legal conclusions, except the section of the opinion dealing with the attempt by the State to pit Benning's testimony against that of the victim's mother. I do not believe the fact that Benning did not answer the question is dispositive of whether he was prejudiced as a result of the improper pitting.

The improper nature of a pitting question lies in the question itself. Usually that type of question does not even call for an answer. When the solicitor asks an argumentative question requiring the defendant to explain the truthfulness or testimony of an adverse witness, the question is improper. *Burgess v. State*, 329 S.C. 88, 495 S.E.2d 445 (1998), *cert. denied*, 523 U.S. 1141, 118 S.Ct. 1849, 140 L.Ed.2d 1098 (1998).

However, I would find the error harmless under the facts of this case. *Thrift v. State*, 302 S.C. 535, 397 S.E.2d 523 (1990) (Improper pitting constitutes reversible error only if the accused was unfairly prejudiced.). Here, the victim testified concerning the sexual assault. The victim's mother came into the bedroom and found Benning and the victim in bed partially nude. The victim's little brother said he had seen Benning touch his sister on her "privates" in his mama's bedroom. Moreover, two different doctors related evidence of sexual

---

**5.** *See State v. Mercado*, 263 S.C. 304, 210 S.E.2d 459 (1974) (where the jury found the defendant not guilty of murder but guilty of grand larceny and the trial judge stated he disagreed with the jury prior to sentencing the defendant to the maximum penalty for grand larceny, the appellate court deferred to the discretion of the trial judge who heard the evidence and saw the witnesses); *cf. State v. Rich*, 269 S.C. 701, 239 S.E.2d 731 (1977) (where the trial judge improperly considered charges on the defendant's "rap sheet" not yet disposed of when sentencing the defendant during a guilty plea, the appellate court remanded the case for sentencing).

conduct. I concur that the improper pitting was harmless under these facts.

. Accordingly, I would affirm Benning's conviction.