THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 The State, Respondent,
 v.
 Clarence Huell, Appellant.
 
 
 

Appeal From Williamsburg County
 Clifton Newman, Circuit Court Judge

Unpublished Opinion No. 2004-UP-066
 Heard January 14, 
 2004  Filed February 6, 2004

AFFIRMED

 
 
 
 Assistant Appellate Defender Robert M. Dudek, of Columbia, for Appellant.
 Attorney General Henry Dargan 
 McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney 
 General Donald J. Zelenka, all of Columbia;  and Solicitor Cecil Kelley Jackson, 
 of Sumter; for Respondent.
 
 
 

PER CURIAM:  Clarence Huell was convicted 
 of murder, possession of a weapon in the commission of a violent crime, and 
 two counts of assault and battery.  The trial judge sentenced him to thirty 
 years imprisonment for murder, five years imprisonment for possession of a firearm 
 in the commission of a violent crime, and thirty days imprisonment for each 
 count of simple assault.  Huell appeals, asserting error in: (1) the exclusion 
 of evidence; and (2) the States closing argument.  We affirm.    
FACTS
On November 5, 2000, the Williamsburg County Sheriffs 
 Department responded to a dispatch regarding a shooting at the home of Jeanette 
 Wilsons mother.  Wilson was Clarence Huells estranged girlfriend.  She had 
 been with the victim, Joseph Lesane, at a club earlier when Huell asked her 
 not to take Lesane to her house.  Huell subsequently came to the house, and 
 an altercation ensued between Wilson and Huell.  Huell also struck Wilsons 
 mother, Emma.  Huell kept a nine-millimeter pistol in his car.    After 
 Wilson went into the house to call police, two gunshots were heard.  The shooting 
 resulted in the Lesanes death.  The police were unable to find any witnesses 
 who saw the incident involving Huell and Lesane.   
Huell was indicted for murder, possession of a 
 weapon in the commission of a violent crime, and two counts of assault and battery 
 of a high and aggravated nature.  Huell admitted killing Lesane, but claimed 
 he did so in self-defense.  According to Huell, Lesane attempted to run over 
 him with the car.  Huell claimed that the gun had accidentally discharged after 
 he had been hit by Lesanes car and was hanging on the hood.  The jury convicted 
 him on all charges, and he was sentenced.  This appeal follows.    
STANDARD OF REVIEW
In criminal cases, the appellate court 
 sits to review errors of law only.  State v. Cutter, 261 S.C. 140, 147, 
 199 S.E.2d 61, 65 (1973).  We are bound by the trial courts factual findings 
 unless they are clearly erroneous.  State v. Quattlebaum, 338 S.C. 441, 
 452, 527 S.E.2d 105, 111 (2000).    
LAW/ANALYSIS
 I.  Relevant Evidence 
Huell argues the trial court 
 erred by refusing to allow the defense to cross-examine the pathologist who 
 performed the autopsy, Dr. Susan McConnell, about a portion of the autopsy report 
 for the purpose of reflecting the inadequate investigation conducted by law 
 enforcement.  We agree, but find exclusion of the testimony was harmless error.   
The defense argued that numerous 
 errors by law enforcement in the investigation were all relevant to the jurys 
 determination of whether the State had proven its case beyond a reasonable doubt.  
 The defense presented considerable evidence in this regard.  The defense theory 
 of an inadequate investigation consisted of the failure to maintain clothing, 
 the failure to process the vehicle, and the failure to utilize the technical 
 services of SLED.  
Dr. McConnell performed the autopsy of 
 the victim and testified as a States witness.  At trial, she was qualified 
 as an expert in forensic pathology and testified that the victim died of a single 
 gunshot wound.  She testified that the gunshot had been from an indeterminate 
 range.  On cross-examination, Dr. McConnell admitted she usually got 
 the victims clothing at the time of the autopsy.  She said, the clothing can 
 be sent to SLED for evaluation of gunshot residue et cetera, et cetera.  We 
 like to see the clothing so if we want to see something, so we could, you know, 
 try to make a determination.  In this case, she did not receive any clothing 
 from law enforcement.    
When defense counsel began to question 
 Dr. McConnell about the contents of the autopsy report, particularly a statement 
 in the report from the deputy coroner, the State objected on the basis of hearsay 
 and relevance.    Outside the presence of the jury, defense counsel referenced 
 the statement in the autopsy report that a suspect and weapon were in the custody 
 of the sheriffs department.  It is undisputed that this information was false.  
 The State did not contest the fact that the information was given to Dr. McConnell.  
 In fact, there was no weapon found and no suspect was in custody at the time.  
 Defense counsel argued it was relevant to the case in terms of additional evidence 
 bearing upon the defense strategy challenging the quality of the investigation 
 performed by law enforcement.  Thus, Huell sought admissibility based on the 
 falsity of the information.  The trial judge excluded the testimony as hearsay.  
Pursuant to Rule 801(c) SCRE, hearsay is a statement, 
 other than one made by the declarant while testifying at the trial or hearing, 
 offered in evidence to prove the truth of the matter asserted.  Since the relevancy 
 of the evidence was grounded in its falsity, it was not hearsay.  The purpose 
 of eliciting this portion of the autopsy report from the pathologist was to 
 establish yet another example of the alleged inadequate investigation by law 
 enforcement.  
Even assuming it was error to exclude the evidence, 
 such error was harmless.  See State v. McWee, 322 S.C. 387, 393, 
 472 S.E.2d 235, 239 (1996);  State v. Benning, 338 S.C. 59, 64, 524 S.E.2d 
 852, 856 (Ct. App. 1999) (finding that an accused cannot avail himself of error 
 as a ground for reversal where the error has not been prejudicial to him).  
 We find the exclusion of the testimony was harmless, because it was cumulative 
 to other evidence bearing upon Huells challenge to the investigation by law 
 enforcement, such as the failure of law enforcement to preserve clothing, to 
 process the vehicle, and to utilize the technical services of SLED.  Huells 
 counsel acknowledged at oral argument that the excluded evidence was additional evidence supporting Huells claim of an inadequate investigation by law enforcement.  
 We view the excluded evidence in the autopsy report as cumulative, and thus 
 conclude Huell was not legally prejudiced by its exclusion.       
II. Closing Argument 
During closing argument, the solicitor 
 noted the close proximity of the bullet holes in the windshield.  The solicitor 
 argued the proximity of the bullet holes reflected the steady position of the 
 pistol when Huell shot Lesane.  This, according to the solicitor, supported 
 the States theory of the killing as a murder and mitigated against Huells 
 claim of self-defense.  The solicitors argument rested in part on what he referred 
 to as the lack of recoil.  The solicitor argued:    
STATE:  . . . Common sense would 
 tell you that if a gun is in a steady position and it is laying right here, 
 and its in a vice, and you pulled the trigger once, that gun cant move because 
 its in that vice . . . But if a person would hold a gun, a recoil would 
 make the gun move some.   And the pattern is ---
DEFENSE:  Objection, Your Honor.
STATE:  ---more erratic.
DEFENSE:  Objection, arguing facts that are not in evidence.
THE COURT:  Objection is overruled.
STATE:  . . . Now you look at the gunshots on that automobile.  
 That gun, I submit to you, was not doing a whole lot of moving.  It was moving 
 some, but it wasnt doing the kind of moving that if you had a man hanging on 
 for dear life on a vehicle like he was saying he was doing, that gun would have 
 been all around, everywhere . . . And those bullets would have been all 
 over everywhere. 
But where have you got them?  
 Youve got them right in a row there.  Right near where the driver was seated.  
 And I submit to you that the more likely thing was the fellow was standing there 
 pumping the bullets in him . . . he intended to kill him.  
(emphasis added)
Our review of the closing argument is based on 
 whether the solicitors comments so infected the trial with unfairness as to 
 make the resulting conviction a denial of due process.  State v. Durden, 
 264 S.C. 86, 93, 212 S.E.2d 587, 590 (1975).  State v. Caldwell, 300 
 S.C. 494, 504, 388 S.E.2d 816, 822 (1990);  State v. Davis, 309 S.C. 
 326, 347, 422 S.E.2d 133, 146 (1992), overruled on other grounds by Brightman 
 v. State, 336 S.C. 348, 520 S.E.2d 614 (1999).  The States closing argument 
 must be confined to evidence in the record and the reasonable inferences that 
 may be drawn from the evidence.  State v. Huggins, 325 S.C. 103, 107, 
 481 S.E.2d 114, 116 (1997); State v. Copeland, 321 S.C. 318, 326, 468 
 S.E.2d 620, 625 (1996); State v. Linder, 276 S.C. 304, 312, 278 S.E.2d 
 335, 339 (1981).  The trial court is vested with broad discretion in determining 
 the propriety of counsels closing arguments and will not be disturbed absent 
 a showing of an abuse of discretion.  State v.  Raffaldt, 318 S.C. 110, 
 114, 456 S.E.2d 390, 393 (1995).  
Huell argues the solicitors argument was outside 
 the record and that he used his expertise to argue the mechanical workings 
 of a firearm.  This was at odds with Huells testimony that the gun had accidentally 
 discharged after he had been hit by Lesanes car and was hanging on the hood.   
In light of Huells testimony, especially his version 
 of his position on the hood of the moving car at the time he shot Lesane, we 
 find the prosecutors comments did not infect the trial with unfairness as to 
 make the resulting conviction a denial of due process.  According to Huell:  
When [Lesane] tried to run over me, I had jump up.  And the 
 car struck me on this knee.  And thats when it throwed me up against the windshield 
 of the car.  My head hit the car again, and the gun went off.  So he get on 
 the brakes to try to throw me off the car.  But by my hand, left hand, it had 
 me in between the hood and the windshield of the car.  It caused me to slide 
 down on the car hood.  And I pulled myself back from the car.  He take off again.  
 Thats when I raised the gun up, and I shot the gun again.
We believe it is within a reasonable jurors common 
 knowledge that if a firearm is discharged by an individual in the situation 
 described by Huell, the resulting location of the shots will tend to be varied.  
 One may reasonably infer that it is less likely, under such a scenario, for 
 the shots to be located in a straight line.  We believe the solicitors comments 
 concerning recoil in the context of Huells testimony fell within the range 
 of a reasonable inference from the evidence.  
CONCLUSION
Accordingly, based on the reasons set forth above, 
 Huells convictions and sentences are
AFFIRMED.
HEARN, C.J., HOWARD, and KITTREDGE, J.J., concur.