697 S.E.2d 622

**The STATE, Respondent,**

v.

**Cameron Lavar BROWN, Appellant.**

**No. 4691.**

Court of Appeals of South Carolina.

Submitted Feb. 1, 2010.

Decided June 2, 2010.

Rehearing Denied Aug. 27, 2010.

Appellate Defender M. Celia Robinson, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Senior Assistant Attorney General Norman Mark Rapoport, all of Columbia, and Solicitor Scarlett Anne Wilson, of Charleston, for Respondent.

SHORT, J.

In this criminal case, Cameron Lavar Brown appeals his convictions and sentences for voluntary manslaughter and possession of a firearm during the commission of a violent crime. Brown argues the trial court erred by: (1) refusing to permit the jury to view the crime scene; (2) allowing the State to comment on his post-arrest silence; (3) admitting evidence that he smoked marijuana on the day of the shooting; and (4) refusing a motion for mistrial and continuance. We affirm.[1]

## FACTS

Regina Scott (Mother) lived with her husband, Henry Scott (the Victim), and her son, Brown, in Charleston. On July 7, 2005, around 9:30 or 10:00 p.m., Mother was washing her hair in the kitchen sink when Brown came into the kitchen and told her something was missing from his room.[2] Mother responded that she would be with him as soon as she finished washing her hair. Brown waited for a moment, but he left the kitchen

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

2. Brown testified he kept the earnings from his job in his room, and his money was missing.

before Mother finished washing her hair. She stated she then heard some "scuffing around" coming from the second floor of the house, and she heard a loud pop while she was trying to finish washing her hair. This noise was caused by the Victim and Brown.

Initially, Mother attributed this sound to the television. She left the kitchen to investigate and realized the television was not the source of the noise. The Victim then approached her and said, "Faye, that boy shot me," and she saw a gunshot wound in the Victim's stomach. The Victim was taken to the hospital where he died.

The day following the shooting, Brown turned himself over to the authorities. Brown was charged with murder and possession of a firearm during the commission of a violent crime. The jury returned a guilty verdict for voluntary manslaughter and possession of a firearm during the commission of a violent crime. The trial court sentenced Brown to eighteen years for the voluntary manslaughter conviction and five years for the firearm conviction, with both sentences to run concurrently. This appeal followed.

## STANDARD OF REVIEW

In criminal cases, the appellate court sits to review errors of law only. *State v. Wilson,* 345 S.C. 1, 5–6, 545 S.E.2d 827, 829 (2001). The court is bound by the trial court's factual findings unless they are clearly erroneous. *Id.* This court does not re-evaluate the facts based on its own view of the preponderance of the evidence but simply determines whether the trial court's ruling is supported by any evidence. *Id.*

## LAW/ANALYSIS

Brown contends the trial court erred by: (1) refusing to permit a jury view of the crime scene; (2) allowing the State to comment on his post-arrest silence; (3) admitting evidence that he had smoked marijuana on the day of the shooting; and (4) refusing a motion for mistrial and continuance. We address each issue in turn.

## A. Jury View

█ Brown contends the trial court abused its discretion by refusing to permit a jury view of the crime scene because the diagram misled and confused the jury regarding the layout of the house; the jury was unable to hear what it was like inside the house; the evidence admitted at trial did not help the jury appreciate the proximity and the size of the rooms in the house; and the evidence failed to depict the stairway and the vestibule where the shooting occurred. We disagree.[3]

Jury views are controlled by section 14–7–1320 of the South Carolina Code, which states in pertinent part:

The jury in any case may, at the request of either party, be taken to view the place or premises in question or any property, matter or thing relating to the controversy between the parties **when it appears to the court that such view is necessary** to a just decision. . . .

S.C.Code Ann. § 14–7–1320 (Supp.2009) (emphasis added).

█ A jury view is a matter within the discretion of the trial court. *State v. McHoney*, 344 S.C. 85, 100, 544 S.E.2d 30, 37 (2001). The trial court's decision will not be reversed absent an abuse of discretion. *Id.*

During Mother's testimony, the State sought to introduce a diagram that showed the layout of the home. The State conceded the diagram was not drawn to scale, but the purpose of the diagram was to show the locations of each of the rooms in the house in relation to each other. Defense counsel stated, "I don't object to the Court's ruling, although I would ask the Court, if it's going to be introduced, that it give more weight to our request for a jury-scene visit, crime scene visit." The trial court admitted the diagram into evidence and denied the jury view request.

The State and defense counsel, along with several witnesses, acknowledged the diagram was not to scale. For example,

---

3. The State argues this issue is not preserved for review. We disagree. Defense counsel asked for a jury view, and the trial court denied this request. This issue was raised to and ruled upon by the trial court and is properly before this court. *Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review.").

Mother stated the diagram was not drawn to scale, but was an accurate representation of the location of the rooms with respect to each other. Officer Heath King agreed with the State's contention that the diagram was not drawn to scale, but he stated it showed with accuracy the layout of the house. Officer Richard Holmes agreed with defense counsel that the diagram was not intended to show the size of the rooms, but it was a layout of the house. Officer Rene Charles agreed with the State that the diagram was not to scale, but it accurately depicted the layout of the house. Based on the foregoing, the jury knew the diagram was not drawn to scale but that it correctly portrayed the layout of the house. Thus, the jury was not misled or confused regarding the layout of the house.

As to Brown's contention the jury was unable to hear what it was like inside the house, Mother's testimony shed light on the subject. Mother stated she heard noise coming from the second floor of the house while she was downstairs in the kitchen washing her hair. She also stated she heard the Victim come down the stairs. The jury might not have been able to hear the acoustic conditions of the house, but from Mother's testimony, it was apparent that a person on the first floor could hear what occurred on the second floor.

Additionally, the evidence admitted at trial showed the proximity and the size of the rooms in the house, including the stairway and the vestibule where the shooting occurred. Mother stated the house was small, the stairway narrow and dark, and described the confines of the house in general. Officer Holmes testified the house "is a confined area." Officer Charles, who took photographs of the crime scene, used these photographs to show the location of the Victim when the police arrived. One of these photographs showed the stairway.

Moreover, the trial court, in declining the request for a jury view, stated:

I was concerned about the representations regarding the scale of the drawing. But as we got further in the trial, it became very apparent to me that the pictures that have been presented of the scene are accurate, they are accurate in scale, and they give a very clear impression of the tightness of this abode.... [The pictures] are incredibly

accurate in terms of the scale, of the narrowness of the porch, the narrowness of the confines within which this incident took place.... If they were not, I think there would be some basis for the Court to go to a jury, to have a jury view. In this instance I do not think it is necessary, and I would find for the record that it is not necessary to a just decision in this case.... The photographs are accurate and are sufficient to aid the jury in their decision making as fact finders of this case, and the Court would deny the motion....

Based on the foregoing, we cannot conclude the trial court improperly denied the jury view request. *Id.* (holding a jury view is a matter within the discretion of the trial court and its decision will not be reversed absent an abuse of discretion); *Id.* at 100–101, 544 S.E.2d at 37–38 (holding the trial court properly denied a jury view of the crime scene in a murder case when the jury requested to view the scene at night due to their concern that a witness lacked sufficient lighting to identify the defendant because a photograph of the area was admitted into evidence that indicated a street light was in the area and the witness testified that he had enough light to identify defendant).

## B. Post–Arrest Silence

Brown next contends the trial court erred by allowing the State to comment on his post-arrest silence. We disagree.

During the trial, the State called Officer Richard Burckhardt to testify. The solicitor asked Officer Burckhardt if Brown complained of any injuries after he turned himself into the authorities, and Officer Burckhardt replied in the negative. Defense counsel moved for a mistrial, arguing Burckhardt's testimony constituted a statement against Brown's interest.

Brown invoked his *Miranda*[4] rights immediately after he turned himself over to the authorities. Thereafter, Brown was placed in a patrol car and transported to the City Police Department where he was formally charged and processed. During this time, Officer Burckhardt used a questionnaire to

---

4. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

inquire about Brown's mental and medical information, including existing medical conditions.[5]

Defense counsel argued Brown invoked his *Miranda* rights, and any subsequent statements made by Brown would violate his right to remain silent. The trial court found *Miranda* inapplicable because Officer Burckhardt's questions were routine administrative questions, and it allowed his testimony. On appeal, Brown asserts this decision was erroneous.

The admission of evidence rests in the sound discretion of the trial court. *State v. Johnson*, 318 S.C. 194, 196, 456 S.E.2d 442, 443 (Ct.App.1995). The trial court's decision will not be overturned unless controlled by an error of law resulting in undue prejudice. *Id.*

The Fifth Amendment to the United States Constitution provides, "No person shall be ... compelled in any criminal case to be a witness against himself...." U.S. Const. amend. V. Based on this right against self-incrimination, the Supreme Court announced, "[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards...." *Miranda*, 384 U.S. at 444, 86 S.Ct. 1602.

 Custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* "Interrogation is defined as express questioning, or its functional equivalent which includes words or actions on the part of the police (**other than those normally attendant to arrest and custody**) that the police should know are reasonably likely to elicit an incriminating response." *State v. Sims*, 304 S.C. 409, 416–17, 405 S.E.2d 377, 381–82 (1991) (internal quotations omitted) (emphasis added). The *Miranda* warnings do not apply to routine booking questions.

---

5. The questions on this questionnaire include: "Have you ever attempted suicide? Are you thinking about committing suicide? Has anyone in your family committed suicide? Has any close relative died recently? Have you been separated from your wife/husband or children or have you been divorced recently? Do you use any types of drugs such as a tranquilizer? Have you lost your job recently? Do you have a medical condition?"

*State v. Sullivan,* 277 S.C. 35, 49, 282 S.E.2d 838, 846 (1981) (overruled on other grounds by *State v. Gilchrist,* 342 S.C. 369, 536 S.E.2d 868 (2000)).

In response to the question, "[A]re there any current physical conditions that we would need to know about, meaning serious things of any serious nature that would need treatment," Brown referred to a heart condition he suffered during the 1990s, but said he had no current problems. The question posed was a routine booking question. As Officer Burckhardt explained, he used this questionnaire on all inmates as part of the booking process. Officer Burckhardt testified that the purpose of the questions was to determine whether an inmate was fit to be incarcerated or needed to be taken to a medical facility to receive medical attention. We find no reversible error in the trial court's ruling.

## C. Marijuana Use

Brown argues the trial court erred by admitting evidence indicating he had smoked marijuana on the day of the shooting because it was improper character evidence and inadmissible under Rule 404(b), SCRE. We disagree.

As noted above, the admission of evidence rests in the sound discretion of the trial court, and the trial court's decision will not be overturned unless it is controlled by an error of law resulting in undue prejudice. *Johnson,* 318 S.C. at 196, 456 S.E.2d at 443. "The mere asking of an improper question is not necessarily prejudicial, however, where no evidence is introduced as a result." *State v. Benning,* 338 S.C. 59, 63, 524 S.E.2d 852, 855 (Ct.App.1999).

The solicitor asked Brown if he had used any drugs prior to the shooting, to which Brown replied in the negative. The solicitor asked Brown whether he remembered speaking to a nurse and telling her that he had smoked marijuana on the day of the shooting. Brown replied, "No, sir, I don't remember that."

Even if we assume that the solicitor's questions were improper, the State did not introduce evidence to show Brown had used marijuana on the day of the shooting. In fact, Brown denied using marijuana on the day of the shooting.

Thus, Brown suffered no prejudice as a result of the solicitor's questions.

## D. Mistrial and Motion for a Continuance

 Brown argues the trial court erred by refusing his motion for mistrial and continuance. We disagree.

The decision to grant or deny a mistrial is within the sound discretion of the trial court. *State v. White*, 371 S.C. 439, 443–44, 639 S.E.2d 160, 162–63 (Ct.App.2006). The trial court's decision will not be overturned on appeal absent an abuse of discretion amounting to an error of law. *Id.* South Carolina courts favor the exercise of wide discretion of the trial court in determining the merits of such a motion in each individual case. *Id.* It is only in cases where there is an abuse of discretion resulting in prejudice to the defendant that we will intervene and grant a new trial. *Id.*

 A manifest necessity must exist for the trial court to discharge the jury and declare a mistrial. *Id.* However, the trial court is left to determine, in its discretion, whether, under all the circumstances of each case, such necessity exists. *Id.* The mistrial should be granted only if there is a manifest necessity or the ends of public justice are served. *Id.* The trial court should first exhaust other methods to cure possible prejudice before declaring a mistrial. *Id.*

 Similarly, the trial court's decision to deny a motion for continuance is a matter within the trial court's discretion. *State v. Lytchfield*, 230 S.C. 405, 409, 95 S.E.2d 857, 859 (1957). As such, this court will not reverse the trial court unless there was an abuse of discretion that resulted in prejudice. *Id.*

During the trial, the State called Sergeant Michael Gordon to testify. Sergeant Gordon stated he was contacted by Oscar Douglas. Douglas was working for defense counsel as a private investigator. Douglas had received a shell casing recovered by Mother as she was cleaning her house a few days after the shooting. Douglas met Gordon and turned over this evidence.

A day after this meeting, Gordon contacted Mother regarding the shell casing. Gordon stated Mother told him that

defense counsel represented the family, and that she would not give a statement. Defense counsel moved for a mistrial on the grounds that the testimony indicated he represented the family, and the representation that Mother would not cooperate with the police was untrue and highly prejudicial to Brown. Defense counsel argued he would need to subpoena Douglas to disprove Gordon's statement. Douglas was in Iraq, and counsel asked for a continuance in order to subpoena Douglas. The trial court denied the mistrial motion and the motion for a continuance.

Initially, we question whether this issue is preserved for our review. After making the motions for a mistrial and a continuance, the State and defense counsel came to a compromise regarding Gordon's testimony. The parties agreed they would stipulate that defense counsel only represented Brown, and defense counsel did not instruct Mother not to cooperate. The parties successfully petitioned the court to instruct the jury that a stipulation is an agreement which requires no further proof. Counsel got the relief asked for and cannot complain on appeal. *State v. Sinclair*, 275 S.C. 608, 610, 274 S.E.2d 411, 412 (1981) (holding where the defendant had received the relief requested from the trial court, there is no issue for the appellate court to decide). Additionally, there is a second ground on which to conclude this issue is unpreserved.

■■■■ If a trial court issues a curative instruction, a party must make a contemporaneous objection to the sufficiency of the curative instruction to preserve an alleged error for review. *State v. Jones*, 325 S.C. 310, 316, 479 S.E.2d 517, 520 (Ct.App.1996) (holding no issue is preserved for appellate review if the complaining party accepts the judge's ruling and does not contemporaneously make an additional objection to the sufficiency of the curative charge). In the present case, the trial court issued a curative instruction and defense counsel failed to challenge the sufficiency of the curative instruction, making this issue unpreserved for review.

■■■ Furthermore, even if this issue were preserved, we believe the trial court's instruction to the jury cured any error. A curative instruction is usually deemed to cure an alleged error. *Id.* The trial court instructed the jury to:

[D]isregard the last question and last answer, asked of the witness in its entirety. You are to give absolutely no consideration to the question or the answer. It is not to be discussed in any way during your deliberation. You are to completely disregard it, and you are to completely disabuse your mind of it. And I am instructing your foreperson that if it is discussed in any way during deliberations, it is to be reported to the Court immediately.

The trial court's curative instruction cured any error presented by Gordon's testimony because the jury was told to disregard that testimony completely. Based on the foregoing, the trial court did not commit reversible error.

## CONCLUSION

Accordingly, the trial court's decision is

**AFFIRMED.**

WILLIAMS and LOCKEMY, JJ., concur.