731 S.E.2d 604

**The STATE, Respondent,**

v.

**Hollie McEACHERN, Appellant.**

**No. 4981.**

Court of Appeals of South Carolina.

Heard Jan. 12, 2012.

Decided June 6, 2012.

Withdrawn, Submitted and Refiled July 18, 2012.

Rehearing Denied July 18, 2012.

126

Jack B. Swerling, of Columbia, and Katherine Carruth Goode, of Winnsboro, for Appellant.

Attorney General Alan Wilson, Chief Deputy Attorney General John McIntosh, Senior Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General David Spencer, and Solicitor Daniel E. Johnson, all of Columbia, for Respondent.

HUFF, J.

Hollie McEachern was convicted of trafficking in cocaine, trafficking in crack cocaine, and possession with intent to

distribute marijuana, and was sentenced to concurrent terms of twenty-five, ten and five years, respectively. McEachern appeals, asserting the trial court erred in admitting various testimony, failing to sustain her objection to certain arguments by the State which exceeded limitations placed by the trial court, denying her mistrial motion based on improper comment by the State and denying her motion for a new trial.

## FACTUAL/PROCEDURAL BACKGROUND

On March 9, 2007, Hollie McEachern was arrested, along with others, after Dominic Thomas set up a drug deal for the Kershaw County Sheriff's Department, following Dominic's arrest by the Department earlier that day. Dominic testified that after he was caught in a drug transaction involving cocaine, he offered to call some people from whom he could obtain drugs. As a result, he called his friend Raheem, who kept Dominic on hold, telling him "he had to call his girl Hollie." Dominic told Raheem he wanted a "Big 8," which is four and a half ounces of powder cocaine. During this phone call, Dominic had Raheem on speaker phone, where Lieutenant Dowey could hear the conversation. Raheem indicated he was "waiting on his girl to see if she was going to do it," because they were not sure they wanted to meet with Dominic. Arrangements were ultimately made to meet in front of a nail salon beside Domino's Pizza, where the "Big 8" was to be purchased for $3,200. An officer then drove Dominic to the location in Dominic's truck. Dominic got out of his truck and got into a vehicle with Hollie, Terrence Rivera, and Theodore Shepperd, who was known as Raheem. Dominic spoke with the driver, Terrence, who Dominic knew, and then turned to Raheem and asked to see the drugs. Raheem, who was sitting in the back seat with Dominic, had the drugs handed to him from the front seat. Dominic believed it was Hollie who handed Raheem the drugs. Dominic indicated he had half of the money with him, and he told them he was going to get the other half when he got out of the truck, at which time the police then surrounded the area.

Lieutenant Dowey testified that he was standing next to Dominic when Dominic made the phone call to Raheem. When Dominic first called, Raheem said that "he didn't have that much" and he was "waiting on his girl to get there."

Raheem called them back, stating that "she had gotten there" and "she had that much." Raheem declined to meet them at McDonald's as they suggested, stating, "Hollie doesn't want to drive that far ... with that much weight." Ultimately, an agreement was made to meet at the nail salon. A police officer drove Dominic to the location in Dominic's vehicle. An SUV registered to Hollie arrived at the location, with Terrence driving, Hollie sitting in the front passenger seat, and Raheem sitting in the back, behind the driver. After hearing Dominic say the code word, the officers executed the take-down. Lieutenant Dowey stated a search of the vehicle revealed a black bag, located underneath the bench seat where Raheem and Dominic were seated, which contained cocaine, marijuana, a large quantity of crack cocaine, empty baggies and digital scales. Underneath the front seat the officers located a large quantity of cocaine in a red bag. Also found was a cigar blunt, containing marijuana, in the car's console. Terrence had, on his person, two small bags of marijuana and $1,723. Raheem had $320. Hollie had a black purse in her possession which held $2,133 and 32 grams of marijuana. After the arrest was made, Dominic informed Lieutenant Dowey that Hollie had passed the bag of drugs from the front seat to Raheem in the back.

Terrence Rivera testified that he, Hollie, and Raheem are all cousins. On the day in question, he and Hollie left the restaurant owned by Hollie's mother, where they both worked, and went to their aunt's house. Terrence drove Hollie's car because Hollie had a problem with her license. They gave Raheem a ride to a nail salon so he could pick up some money for a party Raheem was going to have. Hollie was in the passenger seat and Raheem was sitting behind her. Raheem got out and then brought Dominic back to the vehicle with him. When asked if he saw anything handed from the front seat to the back seat, Terrence stated, "Not exactly. I seen her turn around, and that was it." He later reiterated that he saw Hollie turn around in the car, but did not "see exactly what she passed or if it was anything." Terrence stated that he was on the phone at the time, and did not really see what was going on in the car. After that, Raheem said something, Dominic got out of the car, and Terrence looked up to see a gun in his face. Terrence admitted he had a bag of marijuana

and some money in his pocket, but claimed he was "not guilty of these offenses." Terrence admitted he wrote a note to Raheem stating as follows:

> Yo, Ra, just left the courthouse and gave my statement, told them everything, just need you to say that I was on the phone and couldn't hear what y'all was talking about. Told them Hollie gave you the drugs. Just remember I was on the phone and we're good.

Terrence stated he wrote the note to let Raheem know what was going on with his side of the case and that he had given a statement. On cross-examination, Terrence agreed his note told Raheem that he had informed authorities that he saw Hollie pass drugs, but testified that was not true because he did not see Hollie pass drugs. When asked on re-direct why he would lie to Raheem in that manner, Terrence stated, "At the time I was writing, my writing just got ahead of myself, and the letter was already out of my hand."

The State also presented the testimony of Raheem. According to Raheem, on March 9, 2007, he received a call from Dominic about buying some drugs. Dominic wanted a "Big 8." Raheem called his cousin Hollie to see if she could supply the drugs, and he waited on her and Terrence to come get him. With Terrence driving, Hollie in the front passenger seat, and Raheem sitting behind Terrence, they drove to the location. Hollie had pulled a plastic sandwich bag out of the black bag and handed Raheem the drugs over the seat. Dominic got in the car with them, and he told them he was waiting on his cousin to get some money. Once Dominic got out of the car, the police came. When asked why he thought he could get the drugs from Hollie, Raheem stated that he was dealing drugs and she was who he used to get his drugs from in the past, stating it was "an ongoing thing," and characterizing himself as the middle man. Raheem testified that all of the drugs found in the car that day were Hollie's, with the exception of the two bags of marijuana found on Terrence.

The marijuana found in Hollie's pocketbook weighed 32.5 grams. The other marijuana found in the common area of Hollie's automobile weighed 25 grams. The various other drugs in individual plastic bags found in the vehicle tested positive for powder cocaine, with weights of 124.73 grams,

28.77 grams, and 6.61 grams, and crack cocaine, with weights of 12.25 grams, 3.31 grams, and 13.7 grams.

Hollie took the stand in her own defense. She testified that in March 2007, she was the manager of her mother's restaurant, drawing a salary of $400 a week and earning tips on top of that. At the time the incident occurred on March 9, 2007, Hollie stated she had cashed two payroll checks in the amount of $400 each, and that money was in her pocketbook at the time she was arrested. Hollie testified that she also had about $700 cash in her pocketbook that she was supposed to use to pay for a delivery of supplies for the restaurant. About $180 in her pocketbook was a roll of "old 20's" that she collected. The rest of the money in her pocketbook was proceeds from the restaurant that she had not yet deposited into the bank. Hollie testified that none of the money found in her pocketbook was drug money.

On the night in question, she and Terrence left the restaurant to go to her aunt's house, where Raheem lived. Terrence was driving because her license had been suspended for a simple possession of marijuana charge. While there, Raheem asked for a ride to pick up some money for a party Raheem was having that night, and Hollie agreed. They drove to the nail place, where Raheem exited the car. There was a man standing outside who Hollie did not know, and this person got in the car with Raheem. The man first talked to Terrence, and then he and Raheem engaged in conversation. The man said "I'll be right back," and then the police came and arrested them. Hollie admitted she had purchased the marijuana found in her pocketbook that day for $150, maintaining it was for her personal use and explaining she had been addicted to marijuana and it was more cost efficient to purchase that amount. She denied that Raheem ever called her and asked her to bring drugs, denied ever selling crack or cocaine to anyone, and denied handing something to the back seat while Dominic was in the car. She proclaimed she did not "have anything to do with the crack and the cocaine that were found in the car that night."

The jury convicted Hollie of trafficking in cocaine, trafficking in crack cocaine, and possession with intent to distribute marijuana. This appeal follows.

## ISSUES

1. Whether the trial court erred in admitting testimony concerning Hollie's civil forfeiture of money seized during her arrest, this error being compounded by the State's argument which exceeded the court's limitation on this evidence.

2. Whether the trial court erred in admitting testimony concerning post-arrest assistance Hollie provided to her cousin and co-defendant and failing to sustain her objection to the State's argument based on that evidence which exceeded limitations placed by the trial court.

3. Whether the trial court erred in denying Hollie's mistrial motion based on an improper comment by the State and allowing the State to question her about selling drugs to particular individuals without a proper foundation for such questions, and in denying her motion for a new trial after the State failed to comply with the court's ruling.

4. Whether the trial court erred in denying Hollie's motion for a new trial on the basis of the above errors, singly or cumulatively, and in consideration of multiple instances of improper argument by the State.

## STANDARD OF REVIEW

In criminal cases, the appellate court sits to review errors of law only. *State v. Wilson*, 345 S.C. 1, 5, 545 S.E.2d 827, 829 (2001). The appellate court "does not re-evaluate the facts based on its own view of the preponderance of the evidence but simply determines whether the trial judge's ruling is supported by any evidence." Id. at 6, 545 S.E.2d at 829.

## LAW/ANALYSIS

### A. Civil Forfeiture of Money

The record shows that during cross-examination in relation to Hollie's direct testimony regarding the money found in her pocketbook, the solicitor began to question Hollie concerning a consent order she signed. Defense counsel objected, and the trial court sustained the objection to the admission of the document. When the solicitor inquired if he could ask Hollie if she consented to the forfeiture, without

presenting the order itself, defense counsel again objected. The court ruled the document was not admissible, but concluded whether Hollie forfeited the money was relevant and could be asked. The solicitor agreed he understood that when he argued to the jury, he could not use that evidence as an admission.

When Hollie's cross-examination resumed in front of the jury, she admitted, in spite of her testimony regarding where the $2,133 came from, she agreed to forfeit the vast majority of the money to the State. Hollie went on to explain that she did so after her attorney told her it would be difficult to get the rest of the money back, because of the marijuana in her purse.

During the State's closing argument, the solicitor argued Hollie was not forthright and stated, "[S]he consented she had $2,133, she got $500 back. So she had $1633 she consented to be forfeited as drug proceeds to the State." Defense counsel objected, noting the court had limited the solicitor's argument on this matter, and moved to strike. The trial court sustained the objection and instructed the jury to "[s]trike the most recent statement," noting the only evidence was that there was a forfeiture.

On appeal, Hollie contends the trial court erred in admitting testimony concerning her forfeiture of money. She argues a judgment in a civil action cannot be introduced as evidence in a criminal action to establish the facts on which it was rendered. She asserts, like the forfeiture judgment itself, testimony concerning the forfeiture is inadmissible. Hollie further contends this evidence was not relevant, was extremely prejudicial, and the prejudice outweighed the probative value such that its admission was reversible error. She further maintains this prejudice was heightened when the solicitor contravened the court's prior limitation on the use of the evidence and argued the fact of consent to the jury.

We need not decide whether evidence concerning a consent forfeiture order is admissible in a criminal trial, as we find Hollie opened the door to this evidence. The admission or exclusion of evidence falls within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. *State v. Morris*, 376 S.C. 189, 205, 656

S.E.2d 359, 368 (2008). An abuse of discretion occurs when the trial court's decision is based on an error of law or upon factual findings that are without evidentiary support. Id. at 206, 656 S.E.2d at 368. As well, the scope of cross-examination is within the discretion of the trial court, and the court's decision will not be reversed on appeal absent a showing of prejudice. *State v. Colf,* 337 S.C. 622, 625, 525 S.E.2d 246, 247–48 (2000). When a party introduces evidence about a particular matter, the other party is entitled to introduce evidence in explanation or rebuttal thereof, even if the latter evidence would have been incompetent or irrelevant had it been offered initially. *State v. Jackson,* 364 S.C. 329, 336, 613 S.E.2d 374, 377 (2005); *State v. Stroman,* 281 S.C. 508, 513, 316 S.E.2d 395, 398 (1984); *State v. Beam,* 336 S.C. 45, 52, 518 S.E.2d 297, 301 (Ct.App.1999); *see also State v. Taylor,* 333 S.C. 159, 174, 508 S.E.2d 870, 878 (1998) (noting an accused may be cross-examined as to all matters which he himself has brought up on direct examination). "It is firmly established that otherwise inadmissible evidence may be properly admitted when opposing counsel opens the door to that evidence." *State v. Page,* 378 S.C. 476, 482, 663 S.E.2d 357, 360 (Ct.App. 2008).

Here, Hollie gave lengthy testimony concerning where all the money came from that was found in her pocketbook to rebut any inference that the money was connected to the drugs. Further, Hollie specifically proclaimed none of the money found in her pocketbook was drug money. Thus, Hollie opened the door to admission of evidence that she agreed to forfeit the money in question, and we therefore find no error in the admission of this evidence. We further note that her testimony on this matter on cross-examination was limited to her acknowledgement that she forfeited the majority of the money found in her pocketbook to the State, and she was thereafter allowed to explain that she did so on the advice of her attorney, in consideration of the marijuana found in her pocketbook. Accordingly, we do not believe she has shown prejudicial error. Finally, we note in regard to Hollie's assertion that the solicitor exceeded the trial court's limitations placed on this evidence in closing argument, the trial court sustained Hollie's objection and struck the argument as requested. *See State v. Primus,* 341 S.C. 592, 604, 535 S.E.2d

152, 158 (Ct.App.2000) (holding, where a curative instruction is given and the objecting party does not contemporaneously challenge the sufficiency of the corrective charge or move for a mistrial, no issue is preserved for review), *rev'd in part on other grounds,* 349 S.C. 576, 564 S.E.2d 103 (2002).

## B. Assistance Provided to Terrence

■ On direct examination Terrence testified, without objection, that his mother, cousins, and family hired his attorney for him. The solicitor then asked if Hollie was involved in hiring his lawyer. Defense counsel objected on the grounds of relevance. The trial court sustained this objection. The solicitor then asked if Hollie ever offered to pay for a lawyer for him. Defense counsel again objected and the trial court sustained this objection as well. The solicitor asserted the matter went to "the continuum of the conspiracy." Out of the presence of the jury, the trial court asked what the relevance was, and the solicitor maintained that Hollie was charged with conspiracy to traffic drugs along with Terrence and Raheem, and that the conspiracy did not end when the parties were arrested. He told the court he had been informed by Terrence that Hollie provided Terrence the financial support to retain his attorney, and this was evidence of a continuing conspiracy between the family members. Defense counsel argued the conspiracy ended once the arrests occurred, and there could be no evidence of conspiracy post-arrest. The trial court sustained defense counsel's objection, and stated "[t]he whole business of how [Terrence's attorney] got retained is not admissible." Thereafter, on redirect examination, Terrence testified Hollie had offered to provide financial assistance to him after his arrest, and this occurred just prior to Terrence retaining his latest counsel. Terrence denied there was any discussion with Hollie in regard to her financial assistance and what his version of the facts were, and was adamant that the financial assistance offer was not tied to his testimony whatsoever. Defense counsel did not object to this line of questioning on redirect.

Following Hollie's direct testimony, the solicitor sought to cross-examine her regarding her visiting Terrence's attorney. In a proffer, Hollie stated she went to the attorney's office with Terrence's mother because his mother did not have a

vehicle. Hollie denied assisting Terrence's mother financially in retaining representation for Terrence, stating she only gave his mother money to put in Terrence's account at jail. Defense counsel objected to this testimony as being irrelevant. The solicitor argued it tied in with the evidence concerning the note from Terrence to Raheem regarding them coordinating their testimony and Terrence's testimony that Hollie offered him financial assistance. The trial court indicated it would allow the evidence. Defense counsel then argued the prejudicial value outweighed any probative value. The solicitor reiterated that the evidence was probative of the conspiracy, which involved the cover-up of the crime. The trial court ultimately determined it was "going to allow it, but only in a very limited sense," and instructed the solicitor to not go beyond what Hollie "just testified."

When cross-examination of Hollie resumed before the jury, the solicitor asked her if she ever sent money, either directly or through someone else, to Terrence's account in jail. Hollie responded that she had given Terrence's mother some money at one time because she had indicated Terrence was "doing really bad," and he was unable to call anyone or get any food or long johns. She also acknowledged she took Terrence's mother to obtain a lawyer for him.

During the State's closing argument, the solicitor stated, "[U]sually when you have a conspiracy case it ends when the arrest is made, but this one was interesting because we've got [Terrence] still trying to coordinate testimony, we've got [Hollie] offering financial assistance to [Terrence]. . . ." At this point, defense counsel objected, stating he thought the trial court had "ruled in this area that that was not evidence of the ongoing conspiracy," and the solicitor was "again disregarding [the court's] ruling." The solicitor stated that he did not recall that being the court's ruling, and the trial court then stated, "Move on." Thereafter, the solicitor argued that Terrence testified he received financial assistance from Hollie right before he obtained his attorney, and Hollie admitted she gave money for Terrence's account and went to the office of his attorney for him. No further objection was made to this argument.

On appeal, Hollie contends the trial judge erred in admitting testimony concerning her post-arrest financial assistance to Terrence, and further erred in not sustaining her objection to the State's argument, which exceeded the limitation imposed by the trial court. She argues any conspiracy which may have existed terminated upon the arrest of the three defendants. Hollie maintains her assistance in her family's efforts to hire a lawyer for her cousin and provision of incidental expenses while he was in jail was not evidence of an ongoing conspiracy, and was irrelevant to any issue in the case. Additionally, Hollie contends the solicitor "blatantly exceeded the court's limitation," as the court specifically ruled that how Terrence's attorney got retained was not admissible. She therefore asserts the court committed additional error in not striking the solicitor's argument to the jury in this regard.

Generally, all relevant evidence is admissible. Rule 402, SCRE; *State v. Pittman*, 373 S.C. 527, 578, 647 S.E.2d 144, 170 (2007). Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, SCRE. The trial court has broad discretion in determining the relevancy of evidence and its decision to admit or exclude evidence will not be reversed on appeal absent an abuse of that discretion and a showing of prejudice. *State v. Holder*, 382 S.C. 278, 288, 676 S.E.2d 690, 696 (2009); *State v. Gaster*, 349 S.C. 545, 557, 564 S.E.2d 87, 93 (2002).

First, it should be noted that the trial court sustained Hollie's objections to the questioning of Terrence in regard to how Terrence's attorney was retained, and no unobjected to testimony from Terrence was admitted in this regard. Thus, the only testimony admitted on this subject for which an objection is preserved for review is that of Hollie.

"Bias, prejudice or any motive to misrepresent may be shown to impeach the witness either by examination of the witness *or by evidence otherwise adduced.*" Rule 608(c), SCRE (emphasis added). "Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness'

testimony." *State v. Pipkin,* 359 S.C. 322, 327, 597 S.E.2d 831, 833 (Ct.App.2004) (quoting *U.S. v. Abel,* 469 U.S. 45, 52, 105 S.Ct. 465, 469, 83 L.Ed.2d 450 (1984)). Rule 608(c), SCRE, "preserves South Carolina precedent holding that generally, 'anything having a legitimate tendency to throw light on the accuracy, truthfulness, and sincerity of a witness may be shown and considered in determining the credit to be accorded his testimony.' " *State v. Jones,* 343 S.C. 562, 570, 541 S.E.2d 813, 817 (2001) (quoting *State v. Brewington,* 267 S.C. 97, 226 S.E.2d 249 (1976)).

■ We find the evidence was properly admitted to show bias.[1] Here, evidence that Hollie provided Terrence's mother transportation to assist in attaining an attorney for Terrence, as well as evidence that she provided him financial assistance by giving Terrence's mother some money to put in his account was relevant to Terrence's potential bias toward Hollie. Additionally, we note that evidence was admitted through Terrence, without objection, that Hollie had offered to provide financial assistance to him after his arrest, and this assistance occurred just prior to Terrence retaining his latest counsel. Accordingly, even assuming arguendo the admission of Hollie's testimony in this regard was error, any such error is harmless. *See Holder,* 382 S.C. at 289, 676 S.E.2d at 696–97 (holding the erroneous admission of evidence is harmless beyond a reasonable doubt where it is minimal in the context of the entire record and cumulative to other testimony admitted without objection); *State v. Blackburn,* 271 S.C. 324, 329, 247 S.E.2d 334, 337 (1978) (the admission of improper evidence is deemed harmless if it is merely cumulative to other evidence). *See also State v. Mizzell,* 349 S.C. 326, 333, 563 S.E.2d 315, 318–19 (2002) (noting whether an error is harmless depends on the particular facts of each case, including: the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and the overall strength of the prosecution's case). " 'Harmless beyond a reasonable doubt' means the reviewing

---

1. We note that this court may affirm based on any ground appearing in the record. Rule 220(c), SCACR.

court can conclude the error did not contribute to the verdict beyond a reasonable doubt." Id. 349 S.C. at 334, 563 S.E.2d at 319.

We further find no merit to Hollie's assertion that the court committed error in not striking the solicitor's argument to the jury, because the solicitor exceeded the court's limitation in its admonishment concerning the inadmissibility of how Terrence's attorney was retained. First, we do not believe the solicitor exceeded the court's admonishment. Defense counsel's objection to this argument by the solicitor was that the trial court had ruled this was not evidence of the ongoing conspiracy, and the solicitor was therefore disregarding the court's ruling. However, the record does not reflect such a ruling by the trial court. Rather, the ruling to which Hollie points on appeal is the court's initial determination that evidence of how Terrence's attorney was retained was inadmissible. The trial court never determined that the evidence objected to did not qualify as evidence of an ongoing conspiracy. As to Hollie's assertion that the trial court erred in not striking the solicitor's argument in this regard, Hollie never requested the court strike the argument. After Hollie's initial objection, the court instructed the solicitor to "move on." When the solicitor thereafter argued Terrence testified he received financial assistance from Hollie right before he obtained his attorney, and Hollie admitted she gave money for Terrence's account and went to the office of his attorney for him, defense counsel raised no further objection. *See State v. Carlson,* 363 S.C. 586, 606, 611 S.E.2d 283, 293 (Ct.App.2005) (noting, where a party objects to improper comments in closing arguments and the objection is sustained, the issue is not preserved unless the party further moves to strike or requests a curative instruction). Finally, after reviewing the solicitor's argument in context of the entire record, we find no reversible error. *See State v. Finklea,* 388 S.C. 379, 385–86, 697 S.E.2d 543, 547 (2010) (noting the trial court is vested with broad discretion in dealing with the range and propriety of closing arguments, and ordinarily his rulings on such matters will not be disturbed; the burden is on the appellant to show that any alleged error deprived her of a fair trial; the relevant question is whether the solicitor's action so infected the trial with unfairness as to make the resulting conviction a denial of

due process; and the appellate court must review the argument in the context of the entire record).

### C. Selling of Drugs to Particular Individuals

 During cross-examination of Hollie, the solicitor asked her if she knew "Earl Warren." When Hollie replied, "not by that name," the solicitor then asked, "You hadn't just sold him four cookies of crack that same night?" Hollie replied that she had not, and did not even know who he was. Defense counsel objected, at which point the solicitor stated, "She testified earlier that she had never sold any before, so I'm going to ask her specific names of people that we have heard that she was supplying to." Defense counsel objected again, and the trial court had the jury removed from the courtroom for counsel to further argue the matter. Defense counsel then stated his objection as follows:

> Your Honor, I recognize he is on cross-examination, but he hasn't laid any sort of foundation for this question. And then he blurted out in front of the jury, well, we have heard that she sold cookies to these people. I mean, he is testifying. I don't know how you can unring that bell. I would first request a curative instruction and ask you to ask the jury to disregard the remarks that [the solicitor] made about what they heard and that it is not evidence in this case. If not, I would have to ask for a mistrial.

The trial court found the solicitor's comment, that they had heard Hollie was supplying to specific people, was the equivalent of the solicitor testifying. The solicitor maintained he had a good faith basis to ask Hollie the question because Raheem's attorney relayed information that she was the supplier for Earl Warren and Jarminski Cook, and defense counsel had asked Hollie if she ever sold the drugs, thus making the question about previous incidents proper. Defense counsel argued that his question to Hollie did not "open the door for an improper comment by the solicitor." The trial court agreed with defense counsel on that point, and indicated it would give a curative instruction on the matter. As to the line of questioning concerning sales to other individuals, the court determined the solicitor could ask Hollie "if she had ever sold it to, blank", but he was not allowed to state "we have heard that you have," because that would be the solicitor testifying.

The court noted the solicitor may have inadvertently informed the jury that he had heard that information, but he was not "to do it anymore." It then stated as follows:

> Now, if you bring these witnesses in to contradict her, that's fine. If she denies that she sold it to X or Y or Z, you can bring those people in. One has already testified. But that is as far as I'm—I mean, you can't bring them in through you, you have got to bring them in to prove that she is—to impeach her and prove that she is not telling the truth.

Defense counsel inquired whether the trial court intended to give a curative instruction, and the court informed him that it did. Defense counsel then said, "And you have overruled my motion for a mistrial," to which the court stated, "At this point."

Once the jury returned to the courtroom, the trial court instructed as follows:

> All right, ladies and gentlemen of the jury, with regard to the last comment by the solicitor about, we know this or we know that, I'm going to ask you to disregard that comment. It is not evidence in this case. As I told you at the beginning of the trial, the evidence comes from the witness, not from what the solicitors may say or ask or make any comment about. This lady is all the evidence that you are hearing at this time. So I'm going to ask you to disregard that last comment and strike it from the record and strike it from your consideration in this case.

When Hollie resumed her cross-examination, the solicitor asked her if she knew Jarminski Cook and whether she supplied his drugs. Hollie testified she knew Cook, but denied supplying him drugs. The solicitor then asked if she knew Jarvis Gibbs, and she denied knowing him. Hollie agreed that she did not know Earl Warren or Jarvis Gibbs, but she did know Jarminski Cook. The solicitor then asked, "And you deny being involved with all three of them," to which Hollie replied, "Yes, sir." No further objection was noted by defense counsel.

On appeal, McEachern argues the trial court erred in denying her motion for a mistrial based on the improper comment by the State and in allowing the State to question her about selling drugs to particular individuals without a

proper foundation for such questions, and further erred in denying her motion for a new trial after the State failed to comply with the court's ruling. Hollie makes three separate arguments in this regard.

First, she contends the improper comment by the solicitor in the presence of the jury was not capable of being cured by an instruction to the jury to disregard it, such that the trial court's failure to grant a mistrial was an abuse of discretion.

Second, Hollie argues the solicitor did not have a proper foundation for asking about whether she knew or supplied drugs to these individuals. She maintains the solicitor gave no basis "whatsoever for questioning [her] about ... Jarvis Gibbs." As to the others, she contends the State's information was "based on pure hearsay from an unnamed attorney for one of the co-defendants," and "[t]here was no representation that the information was based on that attorney's personal knowledge of the alleged facts" or that attorney had obtained the information from a reliable source. She argues the information was not from someone with first-hand knowledge of the alleged sales, such that the State did not have a good faith basis for these questions. Accordingly, she maintains, because the State failed to provide any foundation for its question concerning Jarvis Gibbs, and inasmuch as it did not provide a sufficient foundation for its questions concerning Earl Warren and Jarminski Cook, the trial court abused its discretion in allowing this line of cross-examination.

Finally, Hollie contends the trial court abused its discretion in not granting a new trial after the State failed to comply with the court's requirement that it produce the witnesses if Hollie denied she had previously sold drugs to the three individuals. She argues the court instructed the solicitor as to this requirement, and upon the State's failure to produce the foundation witnesses as the court instructed, the trial court should have granted her motion for a new trial.

First, we find no reversible error in the trial court's denial of Hollie's motion for a mistrial based on the improper comment by the State. The decision to grant or deny a motion for a mistrial is a matter within the sound discretion of the trial judge, whose decision will not be disturbed on appeal absent an abuse of discretion amounting to

an error of law. *State v. Council*, 335 S.C. 1, 12, 515 S.E.2d 508, 514 (1999). A mistrial should be granted only when absolutely necessary. Id. at 13, 515 S.E.2d at 514. Further, before a defendant may receive a mistrial, he or she must show both error and resulting prejudice. Id.

Here, Hollie clearly requested a curative instruction, and *in the event the trial court declined to give such an instruction*, requested that the court grant her a mistrial. The trial court then instructed the jury to disregard the solicitor's comment, noting it was not evidence in the case, and the jury was told to strike it from the record and from their consideration. Accordingly, Hollie received the relief she sought and should not now be heard to complain. *See State v. Parris*, 387 S.C. 460, 466, 692 S.E.2d 207, 210 (Ct.App.2010) (holding where a defendant receives the relief requested from the trial court, there is no issue for the appellate court to decide); *State v. Brown*, 389 S.C. 84, 95, 697 S.E.2d 622, 628 (Ct.App.2010) (finding, where defense counsel received the relief asked for, the defendant could not complain on appeal). Hollie contends, however, that the issue is nonetheless preserved because defense counsel noted in argument to the trial court that he did not know how the court could "unring that bell," thus indicating the defense was seeking a mistrial and, following argument on the issue and learning the court intended to give a curative instruction, specifically inquired about the mistrial motion. We note, however, that defense counsel failed to object to the curative instruction as given, and did not make a mistrial motion after the giving of the instruction. "If a trial court issues a curative instruction, a party must make a contemporaneous objection to the sufficiency of the curative instruction to preserve an alleged error for review." *Brown*, 389 S.C. at 95, 697 S.E.2d at 628. Where an objection is sustained, the trial court has rendered a favorable ruling to the party, and it therefore "becomes necessary that the sustained party move to cure, or *move for a mistrial if such a cure is insufficient*, in order to create an appealable issue." *State v. Wilson*, 389 S.C. 579, 583, 698 S.E.2d 862, 864 (Ct.App.2010) (emphasis added). "Moreover, as the law assumes a curative instruction will remedy an error, ... failure to object to the sufficiency of that charge, renders the issue waived and unpreserved for appellate review." Id. Because Hollie failed to object to the curative instruction, and addition-

ally failed to move for a mistrial after the trial court gave its curative instruction, we find the mistrial issue is not preserved for review. Furthermore, even if this issue were properly preserved, we believe the trial court's explicit curative instruction cured any error, and that the prejudicial effect is minimal such that a mistrial was not warranted. *See Brown*, 389 S.C. at 95, 697 S.E.2d at 628 (noting a curative instruction is usually deemed to cure an alleged error); *State v. Moyd*, 321 S.C. 256, 263, 468 S.E.2d 7, 11 (Ct.App.1996) (holding a trial court should exhaust other available methods to cure prejudice before aborting a trial, and where the prejudicial effect is minimal, a mistrial need not be granted in every case where incompetent evidence is received and later stricken and a curative instruction is given).

In regard to Hollie's argument that the solicitor failed to have a proper foundation to ask Hollie questions concerning her selling drugs to individuals because the State's information was based on hearsay from an unnamed attorney and, in the case of Jarvis Gibbs, there was no basis whatsoever for the questioning, we find no reversible error. As noted by Hollie, our courts have held that a cross-examiner must have a good faith factual basis before questioning a witness about his or her past conduct. *State v. Joseph*, 328 S.C. 352, 359, 491 S.E.2d 275, 278 (Ct.App.1997). Counsel should not be permitted to go on a fishing expedition, and "[m]erely asking a question that has no basis in fact may be prejudicial." *State v. McGuire*, 272 S.C. 547, 550, 253 S.E.2d 103, 104 (1979). Here, however, the argument made by defense counsel in this regard was to the solicitor's question of whether Hollie sold crack to Earl Warren the night of this incident, at which point defense counsel objected because the solicitor had not "laid any sort of foundation for this question." Defense counsel also objected at that time to the improper comment by the solicitor. The solicitor then explained his basis for asking the question, and defense counsel did not thereafter contest the basis given by the solicitor as being insufficient, but concentrated his argument instead on the solicitor's improper argument in front of the jury. It is only on appeal that Hollie contends the foundation given by the solicitor was insufficient to provide a factual basis and amounted to a fishing expedition. Accordingly, the argument made on appeal, that the solicitor's stated foundation was insufficient, was not presented to the trial

court, and therefore is not preserved for our review. *See State v. Freiburger,* 366 S.C. 125, 134, 620 S.E.2d 737, 741 (2005) (finding argument advanced on appeal was not raised and ruled on below and therefore was not preserved for review); *I'On, L.L.C. v. Town of Mt. Pleasant,* 338 S.C. 406, 422, 526 S.E.2d 716, 724 (2000) (noting a losing party must first try to convince the lower court it is has ruled wrongly and then, if that effort fails, convince the appellate court that the lower court erred; imposing preservation requirements on the appellant is meant to enable the lower court to rule properly after it has considered all relevant facts, law, and arguments; the purpose of an appeal is to determine whether the trial judge erroneously acted or failed to act and when appellant's contentions are not presented to or passed upon by the trial judge, such contentions will not be considered on appeal). We further note that defense counsel raised no objection whatsoever concerning any questions related to Jarvis Gibbs. Additionally, we note that the mere asking of an improper question is not necessarily prejudicial, where no evidence is introduced as a result. *Brown,* 389 S.C. at 93, 697 S.E.2d at 627. Here, Hollie denied even knowing Warren or Gibbs, and denied "being involved" with any of the three men. Thus, we find any error in allowing these questions was harmless.

 Finally, we find no merit to Hollie's argument the trial court abused its discretion in not granting a new trial because the State failed to comply with the court's requirement that it produce the witnesses if Hollie denied she had previously sold drugs to the three individuals. First, we believe appellate counsel has misinterpreted the trial court's ruling. The court did not, as Hollie suggests, require the solicitor to produce witnesses if Hollie testified she had not previously sold drugs to these individuals. Rather, a reading of this portion of the court's ruling indicates only that the court prohibited the solicitor from testifying as to what the State "heard," but indicated the State might possibly be allowed to present those witnesses if Hollie denied selling the drugs to them. At any rate, this issue is clearly not preserved, as it was never raised to or ruled upon by the trial court. *State v. Johnson,* 363 S.C. 53, 58–59, 609 S.E.2d 520, 523 (2005) (noting, in order to properly preserve an issue for appellate review, there must be a contemporaneous objection

that is ruled upon by the trial court, and if a party fails to properly object, he is procedurally barred from raising the issue on appeal); *State v. McKnight*, 352 S.C. 635, 646–47, 576 S.E.2d 168, 174 (2003) (noting contention must be raised to and ruled upon by trial court to be preserved for appellate review).

### D. Motion for New Trial based on Singular and Cumulative Errors

Lastly, Hollie argues the trial judge erred in denying her motion for a new trial based upon the above argued errors, singly or cumulatively, as well as in consideration of multiple instances of improper argument by the State. First, she contends the trial court abused its discretion in failing to grant her a new trial based upon each of the errors argued in her first three issues. Next she argues, even if no single error sufficiently prejudiced her, that the cumulative effect of the errors was so prejudicial as to deprive her of a fair trial. She maintains that if the trial court erred as to any two or three of these issues, the jury likely based its verdict on these multiple improper considerations. Finally, Hollie argues the cumulative prejudice should be evaluated in light of other improper comments and arguments by the solicitor, as to which objections were sustained. Thus, Hollie maintains, against the backdrop of these numerous prosecutorial excesses, the trial court's error with respect to any single evidentiary issue, or multiple errors in combination, was so prejudicial as to require reversal and warrant a new trial.

We find the facts of this case do not support a finding of cumulative errors warranting reversal. An appellant must demonstrate more than error in order to qualify for reversal pursuant to the cumulative error doctrine. *State v. Johnson*, 334 S.C. 78, 93, 512 S.E.2d 795, 803 (1999). The errors must adversely affect her right to a fair trial to qualify for reversal on this ground. Id. In this regard, our courts have "stressed on more than one occasion, the Constitution entitles a criminal defendant to a fair trial, not a perfect one." Id. (quoting *State v. Mitchell*, 330 S.C. 189, 199–200, 498 S.E.2d 642, 647–48 (1998)).

First, because we have found no errors in regard to the other issues, this issue is without merit. *See State v. Kornah-*

*rens,* 290 S.C. 281, 290, 350 S.E.2d 180, 186 (1986) (holding where the appellate court found no errors, appellant's assertion the trial judge should have granted a new trial because of the cumulative effect of the asserted trial errors had no merit); *State v. Nicholson,* 366 S.C. 568, 581, 623 S.E.2d 100, 106 (Ct.App.2005) (holding, where appellant asserted the cumulative effect of the errors he alleged warranted a new trial, because the appellate court determined that the trial judge did not err in any of the particulars alleged in the appeal, the cumulative error doctrine was inapplicable). Further, even if the court did commit any errors, we believe those errors to be harmless such that Hollie can show neither prejudice, nor that the errors affected her right to a fair trial. *See Johnson,* 334 S.C. at 93, 512 S.E.2d at 803 (finding the defendant failed to show he suffered prejudice warranting a new trial based on cumulative trial errors); *State v. Wyatt,* 317 S.C. 370, 373, 453 S.E.2d 890, 891 (1995) (error in admission of evidence is harmless where it is cumulative to other evidence which was properly admitted). As to the other sustained objections of which Hollie complains, our reading of the record does not support the prejudice she maintains in her appellate brief. Accordingly, we find Hollie failed to demonstrate cumulative errors adversely affected her right to fair trial.

For the foregoing reasons, Hollie's convictions are **AFFIRMED.**

PIEPER and LOCKEMY, JJ., concur.