**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

The State, Respondent,

v.

Randy Blythe, Jr., Appellant.

Appellate Case No. 2011-184308

Appeal From Pickens County
G. Edward Welmaker, Circuit Court Judge

Unpublished Opinion No. 2013-UP-098
Heard February 5, 2013 – Filed March 13, 2013

**AFFIRMED**

Appellate Defender Breen Richard Stevens, of Columbia, for Appellant.

Attorney General Alan Wilson, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Deputy Attorney General Salley W. Elliott, and Assistant Attorney General Julie Kate Keeney, all of Columbia; and Solicitor W. Walter Wilkins, III, of Greenville, for Respondent.

**PER CURIAM:** Randy Blythe, Jr., was convicted of and sentenced for distribution of a cocaine base and distribution of a cocaine base within a half-mile of a school or public park. He appeals, arguing the trial court erred in admitting a statement he gave while in custody but prior to the reading of his *Miranda*[1] rights. We disagree.

The Supreme Court of the United States has held:

> [T]he *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. This focus reflects the fact that the *Miranda* safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police. A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response.

*Rhode Island v. Innis*, 446 U.S. 291, 300-02, 100 S. Ct. 1682, 1689-90 (1980) (emphasis in original; footnotes omitted); *accord State v. Sims*, 304 S.C. 409, 416-17, 405 S.E.2d 377, 381-82 (1991); *State v. Franklin*, 299 S.C. 133, 135-36, 382 S.E.2d 911, 912-13 (1989); *State v. Brown*, 389 S.C. 84, 92, 697 S.E.2d 622, 627 (Ct. App. 2010).

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966).

Blythe claims his statement was involuntary because it was obtained during a custodial interrogation that occurred before the police provided him with *Miranda* warnings. The dispositive issue involved in this appeal, therefore, is whether Blythe was subjected to a custodial interrogation at the time he made the incriminating statement. If he was not, his Fifth Amendment rights and his right to receive *Miranda* warning were not implicated. *United States v. Kimbrough*, 477 F.3d 144, 147 (4th Cir. 2007).

We affirm the admission of Blythe's statement, because the trial court properly found the preponderance of the evidence indicated no interrogation occurred and Blythe gave the statement voluntarily. First, Blythe presented the only evidence of express questioning, and the State successfully rebutted his testimony. At the time of the statement, Blythe was in custody for an unrelated charge and had not been advised of his *Miranda* rights. Although he testified in some detail concerning his interrogation by either four or five officers who "pull[ed] him out of [his] cell" and asked him numerous questions about his drug connections, other testimony called into question key aspects of his account. Blythe identified three of his interrogators. However, one testified he was out of the office on medical leave at the time of Blythe's statement, and another denied questioning Blythe about anything between the early 1990s and 2009. Lieutenant Lovell described meeting Blythe in the booking area after Officer Mills relayed Blythe's request that they meet. Lieutenant Lovell testified only he and Officer Mills had accompanied Blythe into the interview room, but they never asked him a question. They had escorted him from the public booking area into a private interview room,[2] asked no questions, and simply allowed him to talk. Finally, Lieutenant Lovell explained he was not interested in talking with Blythe because the police "had a good case on him." During trial, Officer Mills testified consistently with Lieutenant Lovell's account. In view of the inconsistencies in Blythe's testimony, on the one hand, and the consistent testimony of the police officers, on the other, the trial court did not err in finding a preponderance of the evidence indicated Blythe gave his statement voluntarily and not in response to an interrogation.

Second, the evidence does not support Blythe's contention he was subjected to the "functional equivalent" of an interrogation. A court analyzing whether police

---

[2] Lieutenant Lovell recalled matching the serial numbers of the bills provided to the confidential informant to buy the drugs to the serial numbers of bills recovered from Blythe's car in front of Blythe before they entered the interview room.

behavior constituted the functional equivalent of an interrogation "focuses primarily upon the perceptions of the suspect, rather than the intent of the police." *Innis*, 446 U.S. at 301, 100 S. Ct. at 1690. Blythe argues Lieutenant Lovell matched the serial numbers on the recovered money in front of him in an effort to pressure him into confessing. He also complains Lieutenant Lovell's testimony that he "really wasn't interested" in talking with Blythe but "would listen to what [Blythe] had to say" amounted to using reverse psychology to elicit an incriminating response. However, Blythe's pretrial testimony failed to establish any awareness of such subtleties. At the hearing, Blythe flatly denied seeing the money after his arrest. Moreover, he described a wholly different interrogation scenario in which four or five police officers "pulled [him] out of [his] cell" and questioned him about drug dealers and users. The evidence presented supported the trial court's finding Blythe's statement did not result from any behavior by Lieutenant Lovell. Accordingly, the trial court did not err in admitting Blythe's statement.

**AFFIRMED.**

**FEW, C.J., GEATHERS, J., and CURETON, A.J., concur.**